**Table of Contents**

I.   Statement of Facts ........................................................................... 2

II.  Questions Presented........................................................................ 2

III. Standard of Review ........................................................................ 3

IV. Argument........................................................................................ 4

V.  Conclusion ...................................................................................... 22

Table of Citations

Accord McKee v. City of Rockwall, 877 F.2d 409 (5th Cir.) ................................. 17

A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004) ................. 4

Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir.1990) ....................................... 18

Aristotle P. v. Johnson, 721 F.Supp. 1002, 1010 (N.D.Ill.1989) ............................. 13

Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) ................................ 3, 4, 5, 19

Attson v. United States, 498 U.S. 961, 115. Ct. 393 (1990) ................................. 7

Bailey v. Wood, 909 F.2d 1197, 1199 (8th Cir.1990) ........................................ 20

Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861 (1979) .................................. 10, 11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ... 3, 19

Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000) .............................. 18, 19

Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986) ....................................... 20

Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404, 117
S.Ct. 1382, 137 L.Ed.2d 626 (1997) ....................................................... 4

Black by Black v. Indiana Area School Dist., 985 F.2d 707, 712 (3d Cir.1993) ............. 19

Brown v. Texas, 443 U.S. 47, 51 (1979) ................................................... 9

City of Los Angeles v. Heller, 475 U.S. 796, 106 S. Ct. 1571, 1573 (1986) ................ 17

City of Oklahoma v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 2436 (1985) ................... 19

Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) .................. 3, 19

Edwards v. A.H. Cornell & Sons, Inc., 610 F.3d 217, 219-20 (3d Cir. 2010) ................ 3

Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437 (1960) .......................... 9

Ferguson v. City of Charleston, 186 F.3d 469, 476 (4t Cir. 1999) .......................... 9, 10, 11

Florida v. Jimeno, 500 U.S. 248, 250-51, 111 S.Ct. 1801, 1803 (1991) ..................... 6

Fortes v. Boyertown Sch.Dist., 2006 U.S. Dist. LEXIS 77039, at *22 n.14, *23-24
(E.D.Pa.2006) .......................................................................................................4

Fowler v. Crawford, 534 F.3d 931, 941 n.10 (8th Cir. 2008) ...............................11

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ...................3, 5

Gonzalez v. Ysleta Indep. Sch. Dist., 996 F.2d 745, 759 (5th Cir. 1993) ............20

Griffin v. Strong, 983 F.2d 1544 (10th Cir. 1993) ...........................................13, 15

Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)...............................................9, 14

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ...........20

Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir.),
cert. denied, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985) .....................13

Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d. 666 (2002) ............11

Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ...........20

Kia P. v. McIntyre, 2 F.Supp.2d 281 (E.D. NY 1998) ........................................7, 8

Kraft v. Jacka, 872 F.2d 862, 871 (9th Cir. 1989) ...............................................12

Lawrence v. Texas, 539 U.S. 558, 573-74, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) .......13

McKee v. Hart, 436 F.3d 165, 171 (3d Cir.2006) ................................................21

Michigan Dept. of St. Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481 (1990) ............10

Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991),
cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992) .................12

Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) .............20

Monell v. Dep't of Soc. Servs. of the City of New York,
436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) .....................17, 18, 19

Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1439 (10th Cir.1990)...............14

Mayo v. Lane, 867 F.2d at 375 ...........................................................................14

National Treasury Employees Union v. Von Raab, 489 U.S. 489

U.S. 656, 665, 109 S.Ct. 1384 (1989) .................................................................9

McKee v. Hart, 436 F.3d 165, 171 (3d Cir.2006) ...............................................21

Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) ...............3, 5, 19

Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir.), cert. denied, 502 U.S. 879,
112 S.Ct. 226, 116 L.Ed.2d 183 (1991) ...............................................................14

Planned Parenthood v. Casey, 505 U.S. 833, ----, 112 S.Ct. 2791, 2820,
120 L.Ed.2d 674 (1992) .......................................................................................13

Richardson v. Penfold, 839 F.2d 392, 394-95 (7th Cir.1988 ..............................20

Roberts v. United States Jaycees, 468 U.S. 609, 620, 104 S.Ct. 3244, 3251,
82 L.Ed.2d 462 (1984) ...............................................................................12, 13, 14

Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998) ...........4

Saucier v. Katz, 533 U.S. 194, 2000-01, 121 S.Ct. 2151, 150 L.Ed.2d (2001) ....20, 21

Schlarp v. Dern, 610 F.Supp.2d 450 (W.D. Pa. 2009) ........................................13

Shondel v. McDermott, 775 F.2d 859, 865-66 (7th Cir.1985) ............................12

Simmons v. City of Philadelphia, 947 F.2d 1042 (3rd Cir. (Pa.),1991) ..............20

State v. Jordan, 665 P.2d 1280, 1285 ..................................................................14

Swank v. Smart, 898 F.2d 1247, 1252 (7th Cir.) ................................................12

Tenenbaum v. Williams, 193 F.3d 581, 595 (2nd Cir.), cert. denied U.S.,
120 S.Ct. 1832 (2000) ............................................................................................8

United States v. Attson, 900 F.2d 1427, 1429 (9th Cir.) cert. denied,
498 U.S. 961, 111 S. Ct. 393 (1990) .....................................................................7

Van Emrik v. Chemung County Dept. of Social Services, 911 F. 2d 863 (2nd Cir.) .......8

Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994) .............................17

Whitcomb v. Jefferson County Dep't of Social Servs., 685 F.Supp.
745, 747 (D.Colo.1987) ...................................................................................13, 14

Yin v. California, 95 F.3d 864, 870 (9th Cir. 1996) ............................................10

Youngberg v. Romeo, 457 U.S. 307, 321, 102 S.Ct. 2452, 2461,
73 L.Ed.2d 28 (1982) ...................................................................................................13

John E. Freund, Esq.
Pa. I.D. No. 25390
Lucas J. Repka, Esq.
Pa. I.D. No. 93509
One West Broad Street
Suite 700
Bethlehem, Pennsylvania 18018
Attorneys for Defendant,
        School District of Lebanon

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEENAN AND KIM KENNEDY, P/N/G of | : | NO. 11-0382 |
| T.N., a minor, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CITY OF LEBANON, THE SCHOOL DISTRICT | : | |
| OF LEBANON, NEIL YOUNG, individually and | : | |
| in his official capacity, MARYANNE | : | |
| BARTLEY, individually and in her official capacity, | : The Honorable John E. Jones, III |
| THE GOOD SAMARITAN HEALTH SERVICES | : | |
| FOUNDATION OF LEBANON, and JOHN DOES | : | |
| 1-10, | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

        AND NOW comes the School District of Lebanon, Neil Young, individually and in his official capacity, and Maryanne Bartley, individually and in her official capacity, above-captioned Defendants, by and through their counsel, King, Spry, Herman, Freund & Faul, LLC, to move for dismissal of the Complaint filed by Kennan and Kim Kennedy, as parents and natural guardian of T.N., a minor, above-captioned Plaintiffs, to submit this Memorandum of Law in Support of their Motion to Dismiss.

## I.     STATEMENT OF FACTS/PROCEDURAL HISTORY

Keenan and Kim Kennedy ("Parents"), as the parents and natural guardians of Tireke Newsome ("Student"), a minor, initiated the instant action, by filing a Complaint in the United States District Court for the Middle District on March 1, 2011.  Of significant relevance to this Motion, in their Complaint, Parents allege: Student attended the Lebanon Area School District in the fourth grade for the 2009-2010 school year, (Complaint ¶¶12-13); Defendants had a policy that all students must submit to a physical examination, (Complaint ¶14); on November 19, 2009, Student was pulled out of class and given a physical examination by agent of Good Samaritan Health Services, (Complaint ¶18); and, the examination included an examination of Student's genitalia, (Complaint ¶19).

Based on these averments, Parents attempt to allege two separate claims under Section 1983, 42 U.S.C. §1983.  First, Parents contend Neil Young ("Young"), and Maryanne Bartley ("Bartley"), in their individual capacities, among others, acting under the color of state law, deprived Student of his right as a public school student to personal security and bodily integrity, (Complaint ¶23), and in so doing, violated Student's rights protected by the Fourth, Eighth and Fourteenth Amendments to Constitution of the United States.  (Complaint ¶24).

Second, Parents contend the Lebanon Area School District ("School District"), as well as Young and Bartley, in their official capacities, among others, developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional rights of Student, and specifically, failed to adequately and properly supervise and train in various aspects of health are and physical examination in violation of the laws of the United States.  (Complaint ¶¶29-30).

Both of Parents' claims, however, are completely meritless for the following reasons.  In the absence of a viable claim against the School District, Young and/or Bartley, the instant Motion to Dismiss must be granted as a matter of law.

## II.     QUESTIONS PRESENTED

A.     Whether Parents set forth a viable claim Section 1983 against Young or Bartley, in their individual capacities, for an alleged violation of rights protected by the Fourth, Eighth, and/or Fourteenth Amendment to the United States Constitution.

Suggested Answer:    No.

B.      Whether Parents set forth a viable claim under Section 1983 against the School District, Young or Bartley, in their official capacities.

Suggested Answer:     No.

III.    STANDARD OF REVIEW

When considering a Motion to Dismiss pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.  Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988). However, the Motion to Dismiss standard under Rule 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's opinion in Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009).

After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice in defeating a Rule (b)(6) motion to dismiss.  Id.  At 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) articulated a two part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  See also Edwards v. A.H. Cornell & Sons, Inc., 610 F.3d 217, 219-20 (3d Cir. 2010).

First, the factual and legal elements of a claims should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-211.  Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief."  Id.  At 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts.  Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-that the pleader is entitled to relief."  Iqbal, 129 S.Ct. At 1950.  This "plausibility" determination

under step two of the analysis is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S.Ct. At 1950.

IV.    <u>ARGUMENT</u>

In their Complaint, Parents attempt to set forth two separate and distinct claims under Section 1983, 42 U.S.C. §1983.  First, Parents contend Young, and Bartley, in their individual capacities, among others, acting under the color of state law, deprived Student of his right as a public school student to personal security and bodily integrity, (Complaint ¶23), and in so doing, violated Student's rights protected by the Fourth, Eighth and Fourteenth Amendments to Constitution of the United States.  (Complaint ¶24).  Parents' claims fail as a matter of law.

To recover on a Section 1983 claim, Plaintiff must (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the City, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and his injury.  <u>Fortes v. Boyertown Sch.Dist.</u>, 2006 U.S. Dist. LEXIS 77039, at *22 n.14, *23-24(E.D.Pa.2006) (<u>citing</u> <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  Under Section 1983, local government entities may be held liable *only* for employee actions that are the product of a policy or custom of the local government.  A custom or policy need not be formally adopted to provoke liability, provided that "the relevant practice is so widespread as to have the force of law." <u>A.M. v. Luzerne County Juvenile Det. Ctr.</u>, 372 F.3d 572, 580 (3d Cir. 2004) (<u>quoting</u> <u>Bd of the County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 404 (1997).

A.    <u>Whether Parents set forth a viable claim Section 1983 against Young or Bartley, in their individual capacities for an alleged violation of rights protected by the Fourth, Eighth, and/or Fourteenth Amendment to the United States Constitution</u>.

Section 1983 does not create any substantive rights; rather it provides an avenue of redress against state officials who have violated an individual's federal constitutional rights. <u>Sameric Corp. of Del. v. City of Phila.</u>, 142 F.3d 582, 590 (3d Cir. 1998).  In the instant matter, Parents contend Young and/or Bartley are liable for violations Student's rights that are protected by the Fourth, Eighth and Fourteenth Amendments to the United States Constitutions.  Parents'

Complaint, however, is factually and legally insufficient to survive the instant Motion to Dismiss.

On a factual basis, even a cursory review of the Complaint demonstrates that Parents failed to set forth any factual averments establishing that Young or Bartley participated in, directly or indirectly, in the alleged medical examination of Student, which is the exclusive conduct forming the basis of their claims.  Indeed, in paragraph 18 of the Complaint, Parents aver, "[o]n or about November 19, 2009, Plaintiff Newsome was pulled out of class and given a physical examination by Defendant, Good Samaritan's agent, workmen, servant, or employee, acting individually and/or in the scope of employment, Defendant, John Doe."  Id.

As directed in <u>Fowler</u>, a complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts.  <u>Id.</u> (<u>citing</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'- that the pleader is entitled to relief."  <u>Iqbal</u>, 129 S.Ct. At 1950.  This "plausibility" determination under step two of the analysis is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S.Ct. At 1950.

In the absence of any factual averments implicating Young or Bartley in the actual examination, Young and Bartley have not violated Student's personal security and/or bodily integrity in violation in the Fourth, Eighth or Fourteenth Amendments to the United States Constitution.  As a result, the Motion to Dismiss filed by Young and Bartley to Count I of Parents' Complaint must be granted and Count I of the Complaint be dismissed with prejudice.

In addition, even if Young and Bartley are found to have some connection to the medical examination, which is expressly denied, Parents' Complaint is legally insufficient to set forth a violation of the Fourth, Eighth or Fourteenth Amendments to the United States Constitution as a legal matter.

         1.    <u>Fourth Amendment</u>

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. There are essentially two elements to a Fourth Amendment claim. First, Parents must establish that the alleged search or seizure is the type

protected under the Fourth Amendment. Second, if Parents establish that alleged action is a protected search or seizure, Parents must then establish that the protected search or seizure was unreasonable. Because Parents' claims fail on both elements, dismissal is appropriate.

       a.  <u>The medical examination took place with consent of the Parents</u>.

The Supreme Court has "long approved consensual searches because it is no doubt reasonable for [a governmental employee] to conduct a search once they have been permitted to do so." <u>Florida v. Jimeno</u>, 500 U.S. 248, 250-51, 111 S.Ct. 1801, 1803 (1991). "The standard for measuring the scope of [the] consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood [the scope of the consent to be]?" <u>Jimeno</u>, 500 U.S. at 251, 111 S.Ct. at 1803-4.

In <u>Jimeno</u>, a police officer pulled over a suspect after overhearing him arrange what appeared to be a drug deal and after witnessing the suspect commit a traffic violation. The officer requested permission to search the suspect's vehicle, which was given by the suspect gave permission to search the vehicle. While opening the passenger door, the officer noticed a brown paper bag lying on the floorboard. The officer picked up the back, opened it, and found cocaine inside.

Prior to trial, the trial court granted the suspect's motion to suppress, holding that a general consent to search the car for narcotics did not extend to sealed containers within the car. The state appellate court, as well as the state supreme court, affirmed. The United States Supreme Court, however, reversed and remanded, holding that the search of the bag was not violative of the Fourth Amendment. Specifically, the Supreme Court held that it was "objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs." <u>Jimeno</u>, 500 U.S. at 251, 111 S.Ct. at 1804. "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." <u>Id.</u>

Here, Parents aver that they were aware of impending medical examination, and consented to the examination as evidenced by Exhibit "A" attached to the Complaint. <u>See</u> ¶16 of Complaint. In addition, Exhibit "A" expressly states, "[t]he school physical is a complete exam which includes an optional examination of the male genitalia." <u>Id.</u> In no way did Parents

express limited consent to the examination nor aver that an objection was made to the optional portion of the medical examination.  While Parents aver they expressed a desire to be present during the medical examination, such a desire does not express an objection or limitation concerning the extent of the examination, nor violate rights protected by the Fourth Amendment. Indeed, Young and Bartley respectfully submit, through counsel, that no authority exists to indicate the limitations and/or reasonableness of a search is defined by the presence of another individual.

Accordingly, Parents averments clearly establish that they gave express consent for all elements of these examinations.  As such, dismissal is clearly appropriate because Parents expressly consented to the medical examination, including the examination of Student's genitalia.

### b. There was no Fourth Amendment search.

"The phrase 'searches and seizures' connotes that the type of conduct regulated by the Fourth Amendment must be somehow designed to elicit a benefit for the government in an investigatory, or, more broadly, an administrative capacity."  United States v. Attson, 900 F.2d 1427, 1429 (9th Cir.) cert. denied, 498 U.S. 961, 111 S. Ct. 393 (1990), cert. denied Attson v. United States, 498 U.S. 961, 115. Ct. 393 (1990).  The "Fourth Amendment cannot be triggered simply because a person is acting on behalf of the government.  Instead, the Fourth Amendment will only apply to governmental conduct that can reasonably be characterized as a 'search' or 'seizure'" Id.  "This threshold inquiry is particularly appropriate where the challenged conduct falls outside the area to which the Fourth Amendment most commonly and traditionally applies - law enforcement." Attson, 900 F.2d at 1430.

"Only rarely ... has the [Supreme] Court considered the nature of Fourth Amendment restrictions on the conduct of governmental officials in noncriminal investigations."  Id. (quoting The Supreme Court, 1986 Term - Leading Cases, 101 Harv. L. Rev. 119, 230 (1987)).  "Even rarer are the instances in which the Court has considered the application of the Fourth Amendment to noncriminal non-investigatory governmental conduct."  Id. "Yet when the Court has considered the application of the Fourth Amendment to governmental conduct in a noncriminal context, it has been careful to observe that the application of the amendment is limited."  Id.

The opinion in Kia P. v. McIntyre, 2 F.Supp.2d 281 (E.D. NY 1998), is instructive to the case at bar.  In Mcintyre, Kia P., who was HIV positive, gave birth to Mora P. at Long Island

College Hospital.  Not long after delivery, the Hospital took a urine sample from Mora, which tested positive for methadone.  McIntyre, 2 F.Supp.2d at 285.  Although the hospital allowed Kia to be released from the hospital within two days of delivery, the hospital held Mora, who had been evidencing withdrawal symptoms, pending the results of a confirmation test regarding the detection of methadone in Mora's urine.  Id.   Kia denied having used methadone during her pregnancy.  Id.

A hospital social worker also become involved and contacted the authorities. After a "confirmation test" failed to confirm the presence of methadone in the baby's urine, Mora was released from the hospital.  Mclntyre, 2 F.Supp.2d at 286. Subsequently, Kia, on behalf of her minor child, brought suit against the hospital and its employees for violations of Mora's Fourth Amendment right to be free from unlawful search, claiming the urine test constituted an illegal search.

In dismissing this plaintiffs' Fourth Amendment unlawful search claim on summary judgment, the district court held that the urine test did not constitute a "search" of Mora in violation of the Fourth Amendment. McIntyre, 2 F.Supp. 2d at 292. Although the court recognized that Fourth Amendment protections are triggered when "state authorities have children undergo medical procedures for investigatory purposes", the court held that because this test, which was not ordered by CWA, was conducted for medical and not investigatory purposes, this urine test did not constitute a "search" under the Fourth Amendment.  Id. (emphasis added).

Although there have been cases which have held that medical examinations of children by governmental employees constitute a search under the Fourth Amendment, each of these cases concerned medical examinations conducted for the sole purpose of detecting child abuse. See Tenenbaum v. Williams, 193 F.3d 581, 595 (2nd Cir.), cert. denied U.S., 120 S.Ct. 1832 (2000) (gynecological exam of child during an investigation for sexual abuse); Van Emrik v. Chemung County Dept. of Social Services, 911 F. 2d 863 (2nd Cir.) appeal dismissed without op., 668 N.E.2d 419 (1996) (long bone x-rays during child abuse investigation). The express averments and/or allegations here directly refutes any suggestion that child abuse was even a consideration of the exam.

The averments and allegations in Parents' Complaint clearly establish the examination was conducted for medical, rather than investigatory, purposes in accordance with the Pennsylvania Public School Code of 1949, as amended. No law enforcement agency was

involved in these examinations and none were contacted regarding the results of the examinations. Moreover, no one suspected these children to be sexually abused at the time prior to the examinations taking place. As all of the avements clearly establishes that the examination was conducted strictly for medical, and not investigatory, purposes, no Fourth Amendment protection is implicated, and dismissal is appropriate as a matter of law.

> c.  Even if a constitutionally protected search or seizure occurred, the search and/or seizure was reasonable.

However, even if this Court finds determines Parents did not give consent to conduct the medical examination of Student, dismissal is still appropriate because these examinations were reasonable. The protection afforded under the Fourth Amendment is determined by the circumstances surrounding the alleged search and/or seizure. "Simply put, this amendment guarantees that governmental intrusion into privacy by means of searches or seizures must be reasonable." Ferguson v. City of Charleston, 186 F.3d 469, 476 (4t Cir. 1999), cert. granted ___ U.S. ____, 120 S.Ct. 1239 (2000). It is clear that "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437 (1960). While, in a law enforcement context, a warrant, or at least probable cause, is generally required before a search could be considered constitutional, "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, in an indispensable component of reasonableness in every circumstance." National Treasury Employees Union v. Von Raab, 489 U.S. 489 U.S. 656, 665, 109 S.Ct. 1384 (1989). This exception applies when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). In these type of cases, the Court must balance "the individual's privacy expectations against the government's interests," Von Raab, 489 U.S. at 665-66, with the "degree to which the [intrusion] advances the public interest." Brown v. Texas, 443 U.S. 47, 51 (1979).

This "special needs" test, however, is not generally different from the test of reasonableness in the law enforcement context. As the Supreme Court has held:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the

search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861 (1979).

The first factor in evaluating the reasonableness of a Fourth Amendment search focuses on the governmental need for the intrusion. "The Fourth Amendment does not require a governmental need that is compelling in an absolute sense." Ferguson, 186 F.3d at 477 (citing Veronia Sch. Dist. 47Jv. Acton, 515 U.S. 646,661, 115 S.Ct. 2386 (1995)). "Instead, the interest must be 'important enough to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy.'" Ferguson, 186 F.3d at 477, quoting, 515 U.S. at 661.

"The second factor, the effectiveness of the search, focuses on 'the degree to which [it] advances the public interest.'" Ferguson, 186 F.3d at 478, quoting Michigan Dept. of St. Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481 (1990). In looking at this factor, the Court must leave "the decision as to which among reasonable alternative ... techniques should be employed" to "the government officials who have a unique understanding of, and a responsibility for, limited public resources." Sitz, 496 U.S. at 453-54.

In Ferguson, the Medical University of South Carolina (MUSC) "instituted a policy providing for testing of urine of pregnant women suspected of cocaine use and for reporting, under certain circumstances, of test results to law enforcement officials." Ferguson, 186 F.3d at 473. The plaintiffs in Ferguson, all of whom were subjected to the policy, brought suit for, among other causes of action, violation of the Fourth Amendment right to be free from unreasonable searches and seizures. In affirming the trial court's summary judgment, the Fourth Circuit held that the alleged searches, which involved collecting urine of these women, was reasonable and, therefore, not violative of the Fourth Amendment.

The Fourth Circuit found, first, that testing the urine of these women was an effective means of identifying and treating maternal cocaine use while conserving the limited resources of public health. 186 F.3d at 478. Next, the court went on to hold that the degree of intrusion suffered by these women was minimal at best. "[I]n today's world, a medical examination that does not include either a blood test or urinalysis would be unusual." Yin v. California, 95 F.3d

864, 870 (9th Cir. 1996). By balancing these two factors, the Fourth Circuit determined that "the searches conducted were reasonable and thus not violative of the Fourth Amendment." Ferguson, 186 F.3d at 479.

As the averments and allegations contained in Parents Complaint establishes, the examination at issue in the case at bar was clearly reasonable. There was nothing unusual about the manner in which the examination was conducted.  In fact, the examination was conducted by an outside agency, separate and apart from Young and Bartley, and conducted by a trained medical professional.  Additionally, the examination was completed in order to comply with the Pennsylvania Public School Code, as an effective means of identifying physical and/or potential developmental impediments in children of school age in Pennsylvania.  Accordingly, as the examination conducted in a proper manner, and was reasonable, it is clear that Parents cannot establish a Fourth Amendment violation as a matter of law, and dismissal is appropriate.

2.    Eighth Amendment

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. AMEND. VIII.  It has been noted by a federal appeals court that it cannot imagine an activity in which a state has a stronger interest, or one that is more intricately bound up with a state's laws, regulations and procedures, than the administration of its prisons.  Fowler v. Crawford, 534 F.3d 931, 941 n.10 (8th Cir. 2008).  However, the unnecessary and wanton infliction of pain upon prisoners constitutes cruel and unusual punishment that is forbidden by the Eighth Amendment.  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d. 666 (2002).  Nevertheless, the standard governing the treatment of pretrial detainees is governed by the Fifth and Fourteenth Amendments' Due Process Clause; the Eighth Amendment Cruel and Unusual Punishment Clause governs prisoners who have been convicted.  Bell.

As the Eighth Amendment clearly pertains to prisoners who have been convicted, and not even to those being confined pre-trial, the Eighth Amendment's protections are completely inapplicable to the instant matter.  There are absolutely no averments and/or allegations indicating that Student was being punished in any fashion, nor subjected to any conduct outside of a reasonable medical examination by a medical professional.  Nor has Parents indicated how the Eighth Amendment is applicable or what right was violated by Young and Bartley.

16

As Student is not a prisoner, nor can a routine medical examination conducted pursuant to the Pennsylvania Public School Code and performed by a trained and certified medical professional be considered cruel and/or unusual punishment.  As Parents' claim under the Eighth Amendment is unquestionably inapposite to the instant matter, it must be dismissed with prejudice as a matter of law as it relates to Young and Bartley.

        3.     Fourteenth Amendment

Lastly, although not developed nor particularly clear in their Complaint, it appears as though Parents are attempting to set forth a claim under the Fourteenth Amendment based on the freedom of intimate association, which the Supreme Court characterized as "'an intrinsic element of personal liberty.'  Roberts v. United States Jaycees, 468 U.S. 609, 620, 104 S.Ct. 3244, 3251, 82 L.Ed.2d 462 (1984).  The familial right associations is properly based on the "concept of liberty in the Fourteenth Amendment."  Mayo, 867 F.2d at 375; see Kraft v. Jacka, 872 F.2d 862, 871 (9th Cir. 1989) (basing protection of intimate associational rights on the fourteenth amendment); (basing protection of intimate associational rights on the fourteenth amendment); IDK, Inc. v. Clark County, 836 F.2d 1185, 1192 (9th Cir.1988) (same); cf. Swank v. Smart, 898 F.2d 1247, 1252 (7th Cir.) (stating intimate associational rights not protected by the first amendment), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

The Fourteenth Amendment embodies three different protections: (1) a procedural due process protection requiring the state to provide individuals with some type of process before depriving them of their life, liberty, or property; (2) a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property; and (3) an incorporation of specific protections afforded by the Bill of Rights against the states.  Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991), cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992). The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association.  Shondel v. McDermott, 775 F.2d 859, 865-66 (7th Cir.1985); see Archuleta, 897 F.2d at 499 n. 7 (contrasting procedural due process right at issue in that case).

One's freedom of intimate association, which is based on the Due Process Clause of the Fourteenth Amendment, recognizes as "an intrinsic element of personal liberty" the right of an individual to develop deeply personal attachments with other individuals.  Roberts at 620, 104 S.Ct. 3244. Associations entitled to this unique form of constitutional protection are

characterized by such attributes as "relative smallness," "a high degree of selectivity," and "seclusion from others in critical aspects of the relationship." Id.  The Due Process Clause has generally been construed to protect one's right to marry, to procreate, to associate with family members, to rear children, and to become involved in consensual sexual relationships. Lawrence v. Texas, 539 U.S. 558, 573-74, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); see generally Schlarp v. Dern, 610 F.Supp.2d 450 (W.D. Pa. 2009).

Evaluation of a party's Fourteenth Amendment substantive due process rights requires a "balancing [of the party's] liberty interests against the relevant state interests." Youngberg v. Romeo, 457 U.S. 307, 321, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982).  Accordingly, this Court must weigh plaintiffs' rights of familial association against the state's interest in protecting children within its jurisdiction from undisclosed/untreated medical issues.  Arnold, 880 F.2d at 313; Franz, 791 F.Supp. at 833; Aristotle P. v. Johnson, 721 F.Supp. 1002, 1010 (N.D.Ill.1989); Whitcomb v. Jefferson County Dep't of Social Servs., 685 F.Supp. 745, 747 (D.Colo.1987).

To determine whether a person's familial association rights have been violated in this factual setting, the Court must weigh two factors: the state's interests in investigating the medical condition and/or stability of children, which is the interest served by the alleged state's conduct in providing the medical examination, and Parents' interests in their familial right of association. Again, although not developed nor particularly clear, it appears as though Parents are basing this claim upon their desire to be present during the medical examination.  Griffin v. Strong, 983 F.2d 1544 (10th Cir. 1993).  Initially, a Court examines these factors objectively, that is, outside of the facts or subjective positions of the parties.  Id.  Nonetheless, we do not evaluate constitutional rights in a vacuum. Ultimately, we must examine the parties' interests in light of the facts of this particular case.  See Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir.), cert. denied, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). A Court must weigh these interests to determine whether the state's alleged conduct in this case constituted an undue burden on Parent's associational rights. See Hodgson, 497 U.S. at 446, 110 S.Ct. at 2943 (familial privacy interests protected against undue state interference); Roberts, 468 U.S. at 617-18, 104 S.Ct. at 3249 ("choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State"); Arnold, 880 F.2d at 312 (right protected against "unjustified interference" from the government).  See also Planned Parenthood v. Casey,

505 U.S. 833, ----, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992) (applying "undue burden" standard to substantive due process abortion right).

First, a Court must look to the state's generalized interests in performing medical examinations/screenings of the public school students. Undoubtedly this interest is important. Cf. State v. Jordan, 665 P.2d 1280, 1285 (Utah) (state has compelling interest in protecting children from physical and psychological impairment resulting from sexual exploitation), appeal dismissed, 464 U.S. 910, 104 S.Ct. 266, 78 L.Ed.2d 249 (1983). Second, a Court must examine the important state interests against Parents' familial right of association with Student. This relationship is the basis for an associational right often recognized by courts. See Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1439 (10th Cir.1990); Mayo v. Lane, 867 F.2d at 375. The right to associate with one's family is a very substantial right. See id. "Family relationships 'by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life.'" Arnold, 880 F.2d at 312-13 (quoting Roberts, 468 U.S. at 619-20, 104 S.Ct. at 3250).

Finally, a Court must look to the facts surrounding the parties' interests. Griffin. Not every statement or act that results in an interference with the rights of intimate association is actionable. Griffin. Rather, to rise to the level of a constitutional claim, the defendant must direct his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship. Trujillo v. Board of County Commissioners, 768 F.2d 1186, 1190 (10th Cir.1985).

In determining an undue interference that is actionable under the Fourteenth Amendment, the decision in Griffin is instructive here. There, the Court 10th Circuit Court of Appeals reversed the District Court determining that no reasonable juror, when confronted with balancing the interests on the record before us under the appropriate standard, could determine that plaintiff's associational rights were unduly violated. In so concluding the Court stated:

> The record supports [plaintiffs] allegation that defendant told [plaintiff], falsely, that [her husband] had confessed to child abuse, and that he would be provided an attorney when he got to jail. Further, [plaintiff] testified that [defendant] questioned her morals when she told him she did not believe that [her husband] had committed child abuse. [Defendant] interviewed [plaintiff's

husband] in jail; during that interview, [husband] confessed to abusing several young girls. [Husband] testified that [defendant], after asking if [husband] had heard from his wife, said "the reason she feels this way is because you won't confess to what you've done and get the help that you need." After [husband's] arrest, [plaintiff] visited [defendant] at his office and discussed her plans to move to another state. She testified that [defendant] told her "to go ahead and start my life over. It was a good idea." She also said that [defendant] "us[ed] me against [her husband]" when she tried to explain to [her husband] during a telephone conversation that she was told to leave him and not help him.

We also examine the evidence to determine the severity of the alleged infringement, the need for the defendant's conduct, and any possible alternatives. The evidence in this case gives rise to several considerations. First, both [plaintiff] and [plaintiff's husband] consensually talked to [defendant]. Consensual interviews are less likely to infringe on familial relationships because the parties can always decline to talk. Second, there is no evidence or allegation that the conduct going to [plainitiff's] familial rights of association claims involved physical coercion or conduct that shocks the conscience. See Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir.), cert. denied, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). Third, and weighing the other way, [defendant] apparently lied to [plaintiff] by telling her that Steven had confessed to the crimes with which he was being charged.

We conclude that, on the balance, the infringement of familial rights of association in this case is slight. The right of intimate association is not absolute. Kraft, 872 F.2d at 872. Viewed in the context of the minimal infringement indicated by the record in this case, [defendant's] conduct did not unduly interfere with [plaintiff's] right of familial association with [husband]. Cf. Pittsley, 927 F.2d at 9 ("[T]he liberty interest protected by the substantive due process clause was [not] intended to protect every conceivable family relationship from governmental interference, no matter how far removed...."); Whitcomb, 685

F.Supp. at 747 (stating that government's interest arising from allegations of child abuse may outweigh familial association rights). We conclude that no reasonable juror, when confronted with balancing the interests on the record before us under the appropriate standard, could determine that [plaintiff's] associational rights were unduly violated.   We hold that the district court should have granted [defendant's] motions for directed verdict or judgment notwithstanding the verdict.

Id. at 1548-9.


Similarly, here, the conduct complained of in Parent's Complaint, is insufficient to evidence a violation of Parents' substantive due process rights under the Fourteenth Amendment. In examining the averments closely, Parents contend the state actors unduly violated their associational rights by taking actions that interfered with their right to attend the medical examination of Student.   The severity of infringement, as in Griffin, is slight.   There are absolutely no averments or allegations to demonstrate the medical examination was conducted under abnormal conditions, was done in an improper or unethical manner, was conducted by an anyone other than a trained and/or certified medical professional, was done for any improper purpose, that the examination was unreasonably long in length, or that the conduct complained of was directed at the familial relationship in any manner.

Moreover, Parents were aware of the requirement for the evaluation, and consented to the evaluation.   Further, there are no averments and/or allegations to demonstrate that physical coercion or conduct that shocks the conscience occurred in this matter.   On balance, this Court must conclude that the strong statutory interest requiring the examination compared with the minimal infringement indicated by the alleged facts in Parents' Complaint, that the conduct did not unduly interfere with Parents' right of familial association with Student, as a matter of law. Accordingly, Parents' claims under the Fourteenth Amendment to the United States Constitution against Young and Bartley, must be dismissed with prejudice.

     B.   Whether Parents set forth a viable claim under Section 1983 against the
            School District, Young or Bartley, in their official capacities.

In addition, Parents contend the Lebanon Area School District ("School District"), as well as Young and Bartley, in their official capacities, among others, developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional rights of Student, and specifically, failed to adequately and properly supervise and train in various aspects of health care and physical examination in violation of the laws of the United States.  (Complaint ¶¶29-30).  Again, Parents' claim fails to set forth a viable cause of action against any of the identified Defendants, Count II of Parents' Complaint must be dismissed with prejudice.

      1.      <u>The School District, Young and Bartley, in their official capacities</u>

First and foremost, as Parents and/or Student, as discussed previously, were not the victims of a constitutional deprivation, it is irrelevant whether the  policies allegedly attributable to the School District, Young or Bartley, would have authorized the conduct of which they complain.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 106 S. Ct. 1571, 1573 (1986). <u>Accord</u> <u>McKee v. City of Rockwall</u>, 877 F.2d 409 (5th Cir.), <u>cert.</u> <u>denied</u>, 493 U.S. 1023 (1990).  Moreover, under § 1983, claims of inadequate training, supervision and policies, "cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised."  <u>Webber v. Mefford</u>, 43 F.3d 1340, 1344-45 (10th Cir. 1994).  Because there exists no evidence that Parents' and/or Student's rights were violated, dismissal of Count II against the School District, Young and Bartely is clearly appropriate.

Moreover, based on an alleged deprivation of constitutional rights, which is expressly denied, Parents contend that the School District, Young and Bartley are liable based on policies that were in adequate to supervise, train and control the health care professionals performing the medical examination of Student.   Parents contend the School District, Young and Bartley developed and maintained policies, practices and customs exhibit deliberate indifference to their Constitutional rights.

      While a local governmental entity may be liable under Section 1983 when the execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[,]" there  is no liability under Section 1983 on a theory of respondeat superior.  <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The United States Supreme Court in Board of County Comm'rs v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997), clarified the standard as follows:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [state actor]. The plaintiff must also demonstrate that, through its deliberate conduct, the [state actor] was the "moving force" behind the injury alleged. That is, a plaintiff must show that the [state] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [state] action and the deprivation of federal rights.

Id.  In Luzerne, the Third Circuit Court of Appeals explained how the deliberate indifference standard is applied to a governmental entity in a Section 1983 action pursuant to Monell:

> A governmental entity ... cannot be liable under a theory of respondeat superior or vicarious liability. Rather, in order for a governmental entity (generically referred to as a "municipality") to be liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation. A plaintiff can establish causation by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.

Luzerne, 372 F.3d at 580 (internal quotation marks and citations omitted).

"[I]t is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir.1990).  Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000) (internal quotation marks and citation omitted). "If ... the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Id. (internal quotation marks and citations omitted).

Here, Parents have failed to any policy, practice or custom developed, implemented and/or acquiesced in by the School District, Young or Bartley that supports their allegations. Instead, they have only alleged that "Defendants failed to adequately and properly supervise and train in various aspects of health care and physical examinations in violation of the laws of the United States, Commonwealth of Pennsylvania, and otherwise." See ¶30 of Parents' Complaint.

Parents likewise fail to point to any "practices ... so permanent and well settled as to virtually constitute law." Berg, 219 F.3d at 275 (quotation marks and citation omitted). Indeed, the Third Circuit Court of Appeals has previously rejected a § 1983 claim where the plaintiff "provided no evidence that [the school district's] policy is to ignore the responsibilities imposed by IDEA. Rather the evidence presented was that [the school district] failed to fulfill its responsibilities." Ridgewood, 172 F.3d at 252. Likewise, the allegations in Parents' Complaint do not support a determination that the School District's policy was to ignore any perceived responsibility under the Pennsylvania Public School Code or Constitutional rights of constituents.

After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice in defeating a Rule (b)(6) motion to dismiss. Id. At 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, a complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). Where, as here, the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint is insufficient to survive the instant Motion to Dismiss. Iqbal.

Although Parents' object failure to allege the existence of a specific policy, practice or custom of the School District, Young or Bartley, is a sufficient basis to dismiss Count II of Parents' Complaint against the aforementioned defendants, this Court must also conclude that Parents have failed to set forth sufficient averments and/or allegations to demonstrate the two additional requisite elements for recovery under Monell. First, the plaintiff must demonstrate that the defendants' policy or custom caused the alleged constitutional injury. Black by Black v. Indiana Area School Dist., 985 F.2d 707, 712 (3d Cir.1993). Here, Parents have failed aver how the policy complained of either directly or proximately caused a licensed and certified medical professional to intentionally violate Student's constitutional rights. As a violation of a policy cannot be the basis for a claim under § 1983, dismissal is appropriate. City of Oklahoma v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 2436 (1985).

Second, there must be proof that the defendants acted with "deliberate indifference" to the risk of injury. Id. Negligent failure to recognize the risk of injury is not sufficient to meet the "deliberate indifference" requirement. Colburn v. Upper Darby Township, 946 F.2d 1017,

1025 (3d Cir.1991).  In <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042 (3rd Cir. (Pa.),1991), the Court indicated that plaintiff can demonstrate that the defendant was deliberately indifferent by proving either an intentional deprivation of rights or "by showing that he acted in reckless disregard of those rights"; this can be established by showing the plaintiff "was faced with a pervasive risk of harm and that [the defendant] failed to reasonably respond to that risk."  <u>Bailey v. Wood</u>, 909 F.2d 1197, 1199 (8th Cir.1990); <u>see also</u> <u>Richardson v. Penfold</u>, 839 F.2d 392, 394-95 (7th Cir.1988); <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir.1986).

Again, in the instant matter, Parents have failed to aver and/or allege how a policy, practice or custom attributable to the School District, Young or Bartley resulted in an intentional deprivation of rights, or that Student was faced with a pervasive risk of harm from a medical examination conducted by a medical professional, that an aforementioned was aware of that pervasive risk of harm, and failed to reasonably respond to that risk.  The School District, Young and Bartley respectfully submit that based upon the averred facts of the instant matter, Parents and/or Student are unable to demonstrate action or conduct that can be considered "deliberate indifference" as a matter of law.

In fact, if anything, all Parents could, if at all, establish was that the School District, Young and Bartley was potentially negligent in failing to coordinate Parents attendance at the medical examination.  However, the law is clear that claims of negligence are insufficient to create Section 1983 liability.  <u>See</u> <u>Gonzalez v. Ysleta Indep. Sch. Dist.</u>, 996 F.2d 745, 759 (5th Cir. 1993).

2.      <u>Young and Bartley</u>

Lastly, Parents claims against Young and Bartley, in thief official capacities, as governmental officials, are precluded by the doctring of qualified immunity.  Since the privilege of qualified immunity "is an immunity for suit rather than a mere defense to liability," <u>Saucier v. Katz</u>, 533 U.S. 194, 2000-01, 121 S.Ct. 2151, 150 L.Ed.2d (2001), a court should address the issue "at the earliest possible stage in litigation."  <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Because "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known," <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  "Unless the plaintiff's

allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

As the Supreme Court noted in <u>Saucier</u>, courts do this inquiry in two steps. First, a court asks whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u> 533 U.S. at 201, 121 S.Ct. 2151. Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." <u>Id.</u> This sub-inquiry probes whether there is "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put the defendant on notice that his or her conduct is constitutionally prohibited." <u>McKee v. Hart</u>, 436 F.3d 165, 171 (3d Cir.2006).

However, the United States Supreme Court recently clarified that <u>Saucier</u>' two-step sequence is not obligatory. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Here, Parents Complaint, as previously discussed, fails to set forth a constitutional violation. Moreover, the Complaint fails to identify a well-defined and clearly established right that was violated. As the Complaint does not evidence a sufficient precedent at the time of the action, factually similar to the instant allegations, to put the Young or Bartley on notice that his or her conduct is constitutionally prohibited, they are entitled to qualified immunity. As a result, Count II of the Complaint against Young and Bartley must be dismissed as barred by qualified immunity.

[INTENTIONALLY LEFT BLANK]

V.      CONCLUSION

For the foregoing reasons, the School District, Young, and Bartley respectfully request this Court enter an Order granting their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and thereby dismissing the Complaint in this matter in its entirety, with prejudice.

Respectfully Submitted,

KING, SPRY, HERMAN, FREUND & FAUL


By:  /s/ John E. Freund, III
     John E. Freund, III, Esquire
     Pa. I.D. No. 25390
     One West Broad Street
     Bethlehem, Pennsylvania 18018
     Phone: (610) 332 – 0390
     Fax:    (610) 332 – 0314

Dated: April 26, 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEENAN AND KIM KENNEDY, P/N/G of | : | NO. 11-0382 |
| T.N., a minor, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CITY OF LEBANON, THE SCHOOL DISTRICT | : | |
| OF LEBANON, NEIL YOUNG, individually and | : | |
| in his official capacity, MARYANNE | : | |
| BARTLEY, individually and in her official capacity, | : The Honorable John E. Jones, III | |
| THE GOOD SAMARITAN HEALTH SERVICES | : | |
| FOUNDATION OF LEBANON, and JOHN DOES | : | |
| 1-10, | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, hereby certify, that I served a true and correct copy of the Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which was filed with court on April 26, 2011, on this 26th day of April, 2011, by United States Mail, First Class, upon the following:

Mathew B. Weisenberg
Weisberg Law, P.C.
7 South Morton Avenue
Morton, Pennsylvania 19070
    Attorney for Plaintiffs

Michael C. Mongiello
Marshall, Dennehey, Warner, Colman &
    Goggin
4200 Crums Mill Road, Suite B
Harrisburg, Pennsylvania 17112
    Attorney for Good Samaritan Health
    Services Foundation

By: /s/ John E. Freund, III
    John E. Freund, III, Esquire
    Pa. I.D. No. 25390
    One West Broad Street
    Bethlehem, Pennsylvania 18018
    Phone: (610) 332 – 0390
    Fax:    (610) 332 – 0314

Dated: April 26, 2011