UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEENAN AND KIM KENNEDY | : | |
| P/N/G of TIREKE NEWSOME, a minor | : | |
| | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | No: 1:11-CV-0382-JEJ |
| | : | |
| CITY OF LEBANON, et al. | : | (Judge Jones) |
| | : | |
| Defendants | : | |

BRIEF IN SUPPORT OF
MOTION TO DIMISS PLAINTIFFS' COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)
OF DEFENDANT, GOOD SAMARITAN
HEALTH SERVICES FOUNDATION

## I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs, Keenan and Kim Kennedy ("parent-Plaintiffs"), as parents and natural guardians of Tireke Newsome ("minor-Plaintiff") (collectively hereinafter referred to as "Plaintiffs") commenced the instant civil rights action under 42 U.S.C. § 1983 ("Section 1983") on March 1, 2011.  In this regard, Plaintiffs filed a Complaint against several Defendants, including The Good Samaritan Health Services Foundation of Lebanon, Pennsylvania ("GSHSF").  (Doc. 1)  A true and correct copy of Plaintiff's Complaint is attached to the instant Motion as Exhibit "A".

In their Complaint, Plaintiffs allege that in approximately March 2009, minor-Plaintiff was registered to attend Northwest Elementary School ("Northwest").  Id. at ¶ 12.  In the school year beginning September 2009, minor-Plaintiff was to begin the fourth grade at Northwest.  Id. at ¶ 13.  Plaintiffs claim that Northwest had a policy in place requiring that students submit to a physical examination at certain times, including upon entry into Northwest as was the case with minor-Plaintiff.  Id. at ¶ 14.  In a form provided to parent-Plaintiffs in this regard, it was specifically recommended that their family physician perform the physical examination of minor-Plaintiff.  Id. at Exhibit "A", p. 1.  However, it was also stated that the physical examination[1] could otherwise be performed by "Good Samaritan Family Practice"[2] ("GSFP").  Id.  Plaintiff-parents apparently chose to have the physical examination performed by GSFP and notified Northwest in writing of their desire to attend same.  Id. at ¶ 15 and Exhibit "A".

Although allegedly advised that minor-Plaintiff's physical examination would take place on December 17, 2009, causing parent-Plaintiffs to make arrangements to be present on that date, on or about November 19, 2009, GSFP performed a physical examination of  minor-Plaintiff without parent-Plaintiffs being present.  Id. at ¶¶ 17-18.  Said physical examination, in fact, included an

---

[1] It is specifically stated in the form that "[t]he school physical is a complete exam which includes an optional examination of the male genitalia."  Id.

[2] A private entity within GSHSF.

inspection of minor-Plaintiff's genitalia, which allegedly caused him to become upset and cry. Id. at ¶ 19-20.

Based on the foregoing facts, Plaintiffs make claim against GSHSF under Section 1983 and the Monell Doctrine for developing and maintaining policies, practices and customs exhibiting deliberate indifference to the Fourth, Eighth and Fourteenth Amendment rights of minor-Plaintiff. Id. at Count II. Specifically, Plaintiffs allege that GSHSF failed to properly supervise and train the examining healthcare provider of GSFP resulting in violation to minor-Plaintiff's constitutional right "to be free from physical intrusion." Id. at ¶¶ 29-30 and Civil Cover Sheet to Complaint, § VI.

On April 1, 2011, the undersigned counsel entered his appearance on behalf of GSHSF (Doc. 7) and executed a Waiver of Service of Summons form (Doc. 8). Pursuant to said Waiver, GSHSF's responsive pleading to Plaintiff's Complaint is due to be filed on or before May 16, 2011. This Brief is timely offered in support of the GSHSF's Motion to Dismiss Plaintiff's Complaint, which is being concurrently filed herewith.

## II.   <u>ISSUES</u>

A.   WHETHER PLAINTIFFS' COMPLAINT AGAINST GSHSF
SHOULD BE DISMISSED *IN TOTO* WITH PREJUDICE
BECAUSE GSHSF IS NOT A STATE ACTOR, WHICH IS A
THRESHOLD REQUIREMENT FOR PURPOSES OF PURSUING
A CAUSE OF ACTION FOR CONSTITUTIONAL VIOLATIONS
UNDER SECTION 1983?

(Suggested answer in the AFFIRMATIVE.)

B.   WHETHER PLAINTIFFS' SECTION 1983 CLAIM AGAINST
GSHSF SHOULD BE DISMISSED BECAUSE THERE ARE NO
FACTS ALLEGED TO ESTABLISH THE REQUISITE
"DELIBERATE INDIFFERENCE" TO MINOR-PLAINTIFF'S
CONSTITUTIONAL RIGHTS?

(Suggested answer in the AFFIRMATIVE.)

C.   WHETHER PLAINTIFFS HAVE FAILED TO ASSERT VALID
CONSTITUTIONAL RIGHTS UNDER THE FOURTH, EIGHTH
AND/OR FOURTEENTH AMENMENTS TO THE UNITED
STARES CONSTITUTION (NOR INFRINGEMENT THEREOF)
AS UNDERLYING THEIR SECTION 1983 CLAIM?

(Suggested answer in the AFFIRMATIVE.)

D.   WHETHER PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES
AGAINST GSHSF SHOULD BE DISMISSED WITH PREJUDICE
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO
PLEAD SUFFICIENT SUPPORTING FACTS?

(Suggested Answer in the AFFIRMATIVE.)

## III.   <u>ARGUMENT</u>

<u>Applicable Legal Standards.</u>

Herein, GSHSF challenges the legal sufficiency of, and therefore seeks to dismiss, Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In deciding such a motion, the Court must accept as true all of the factual allegations of Plaintiff's pleading, but can also make reasonable inferences that can be drawn from the face thereof.  A Court can dismiss a complaint in response to a motion under F.R.C.P. 12(b)(6) when "it appears beyond a doubt that the Plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see</u> <u>also</u> <u>Labove v. Lallui</u>, 809 F. 2d (3rd Cir. 1987).  A complaint can likewise be dismissed if it fails to state a legal theory upon which relief can be granted, or fails to allege sufficient facts to support a cause of action.  <u>SmileCare Dental Group v. Delta Dental Plan of Calif, Inc.</u>, 88 F. 3d 780, 783 (9th Cir. 1996); <u>see</u> <u>also</u> <u>Rasom v. Marrazzo</u>, 848 F. 2d 398, 401 (3rd Cir. 1988).  In this regard, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Gooley v. Mobil Oil Corp.</u>, 851 F. 2d 513, 515 (1st Cir. 1988).

In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (U.S. 2009), the Supreme Court of the

United States set forth an explanation of its approach to pleading a cause of action,

as applicable in this Court.  The Court indicated:

> First, the tenet that a Court must accept as true all of the
> allegations contained in a Complaint is inapplicable to
> legal conclusions.  Thread bear recitals of the elements of
> the cause of action, supported by merely conclusory
> statements, do not suffice.  Although for the purposes of
> a Motion to Dismiss we must take all of the factual
> allegations in the Complaint as true, we 'are not bound to
> accept as true a legal conclusion couched as a factual
> allegation.'  Rule 8 marks a notable and generous
> departure from the hyper-technical, code pleading regime
> of a prior era, but it does not unlock the doors of
> discovery for a Plaintiff armed with nothing more than
> conclusions.  Second, only a Complaint that states a
> plausible claim for relief survives a Motion to Dismiss.

<u>Id.</u>  (Slip Opinion, pages 14-15).  According to the <u>Ashcroft</u> Court,

> [d]etermining whether a Complaint states a plausible
> claim for relief will, as the Court of Appeals observed, be
> a context-specific task that requires the reviewing Court
> to draw on its judicial experience and common sense.
> (citation omitted).

(<u>Id.</u> at 15).  Thus, where the well pleaded facts do not permit the Court to infer

more than the mere possibility of misconduct, the Complaint has alleged, but it has

not shown, that the pleader is entitled to relief.  <u>Id.</u>

A.   PLAINTIFFS' COMPLAINT AGAINST GSHSF SHOULD BE DISMISSED *IN TOTO WITH PREJUDICE* BECAUSE GSHSF IS NOT A STATE ACTOR, WHICH IS A THRESHOLD REQUIREMENT FOR PURPOSES OF PURSUING A CAUSE OF ACTION FOR CONSTITUTIONAL VIOLATIONS UNDER SECTION 1983

1.   <u>Factual background</u>.

In their Complaint, Plaintiffs allege only the following facts with regard to

GSHSF:

10.   Defendant, The Good Samaritan Health Services Foundation of Lebanon, Pennsylvania ("Good Samaritan"), <u>is a non-profit corporation</u>, organized and existing under the laws of the Commonwealth of Pennsylvania.

\*       \*       \*

18.   On or about November 19, 2009, Plaintiff Newsome was pulled out of class and given a physical examination by Defendant, Good Samaritan's agent, workmen, servant, or employee acting individually and/or in the scope of employment, Defendant, John Doe.[3]

19.   Said physical examination included an examination of Newsome's genitalia.

<u>See</u> Exhibit "A" (emphasis supplied).  There is <u>no</u> allegation made in Plaintiff's

Complaint that GSHSF is a state entity (because it is not).

---

[3] It will be assumed for purposes of the instant argument only that "John Doe" healthcare provider who performed the physical examination of minor-Plaintiff was at all relevant times an employee of GSHSF.

2.     <u>Analysis</u>.

It is well settled that Section1983 is a not a source of substantive rights; rather Section 1983 is merely a "vehicle" used to vindicate violations of federal law committed by "state actors."   <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d. Cir. 1996). In this regard, to properly plead a claim under Section1983, a plaintiff must allege a "deprivation of a right secured by the Constitution and the laws of the United States . . . by a person acting under color of State law."   <u>Id.</u> (citations omitted.) Therefore, the threshold issue presented in any Section1983 claim is whether a plaintiff has sufficiently alleged a deprivation of a constitutional right by a state actor.   <u>Brown v. Commonwealth,</u> 318 F.3d 473 (3rd Cir. 2003).   In other words, state action is a prerequisite to liability under Section1983.   <u>Kougher v. Burd</u>, 2007 U.S. Dist. LEXIS 8416 (M.D. Pa. 2007) (citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)).   To the contrary "actions of private citizens [or entities], without any showing of state action, do not give rise to a cognizable §1983 claim."   <u>Gonzalez v. Feiner</u>, 131 Fed. Appx. 373, 377 (3rd Cir. 2003).   Neither Section 1983 nor <u>Monell</u> Doctrine claims may be brought against private entities unless they are acting under the color of state law.   <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005); and <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 581-84 (3d Cir. 2003).

With regard to the analysis that must be undertaken in determining whether a private entity is acting under color of state law, the recent opinion of <u>Becker v. City Univ. of Seattle</u>, 723 F.Supp. 2d 807 (E.D.Pa. 2010), is summarily instructive:

> The Third Circuit treats § 1983's 'under color of law' provision identically to the Fourteenth Amendment's 'state action' requirement. <u>See</u> <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009).  <u>A private actor's behavior constitutes state action only where there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."</u>  <u>Id.</u> (quoting <u>Leshko</u>, 423 F.3d at 339).  <u>To determine whether this nexus exists, the Third Circuit employs three broad tests:</u>
>
>> (1) whether the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state;
>>
>> (2) whether the private party has acted with the help of or in concert with state officials; and
>>
>> (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.
>
> <u>Id.</u> (internal quotation marks omitted) (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1142 (3d Cir. 1995)).  Under all three tests, 'the inquiry is fact-specific.'  <u>Id.</u> (quoting <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995)).

<u>Id.</u> at 810-811 (emphasis supplied).  In the seminal case of <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982), this Nation's Highest Court made clear that if there is no state action based on these legal considerations, a Section 1983 inquiry ends there.

a.    Test #1: Does GSFP exercise powers that are
      traditionally the exclusive prerogative of the state?

As explained in <u>Black v. Indiana Area School District</u>, 985 F.2d 707 (3d.

Cir. 1993):

> It is clear from Rendell-Baker that a state contractor and its employees
> are not state actors simply because they are carrying out a state
> sponsored [school] program and the contractor is being compensated
> therefor by the state.  Nor does the fact that the activity being
> performed is a public function render the contractor and its employees
> state actors.  For the nature of the contractor's activity to make a
> difference, the function performed must have been 'traditionally the
> exclusive prerogative of the State.'  457 U.S. at 842 (quoting <u>Jackson</u>,
> supra, at 353).  The nature of the contractor's activity in <u>Rendell-
> Baker</u> did not make the contractor and its employees state actors
> because the policy choice of Massachusetts to provide educational
> services for maladjusted high school students at public expense 'in no
> way [made] these services the exclusive province of the State.'  <u>Id.</u> at
> 842.
>
> *     *     *
>
> While [the contractor] and its employees were carrying out a state
> program at state expense, they were not performing a function that has
> been 'traditionally the exclusive prerogative of the state' and there was
> no state regulation that 'compelled or even influenced' the conduct
> which is alleged to have violated plaintiffs' constitutional rights.

<u>Id.</u> at 710 (emphasis supplied).  The <u>Black</u> court accordingly found that a school

bus driver employed by a private contractor to the school district was not a state

actor.  <u>Id.</u> at 709-711.

It is well-established that "the relevant question is not simply whether a

private group is serving a 'public function,'" which even if true, does not suggest

state action.  Rendell-Baker, *supra* at 842.  Accordingly, and as recognized in

Becker, *supra*, the "exclusive state control test is rarely met . . . [because it]

imposes a rigorous standard."  Id. at 811 (emphasis supplied).  See also Rodriguez

v. Sullivan County Victim Services, 2006 U.S. Dist. LEXIS 22143, *4 (M.D.Pa.

2006) (holding that the mere fact that a private entity performs a function that

serves the public does not make that entity's actions governmental action);

Goodwin v. Moyer, 549 F.Supp. 2d 621, 627 (M.D.Pa. 2006) (ruling based on

Rendell-Baker that acts of private contractors for the state do not becomes state

action by reason of significant or even total engagement in performing public

contracts); and Sershen v. Cholish, 2008 U.S. Dist. LEXIS 15678, *4 (M.D.Pa.

2008).  Finally, by way of distinction, and as a rare example of where the exclusive

state control test is met,

> In West v. Atkins, 487 U.S. 42, 101 L. Ed. 2d 40, 108 S.
> Ct. 2250 (1988), the Court found that a physician,
> employed by the State to provide medical care to inmates
> in state prison, was a state actor for the purposes of §
> 1983 liability.  Because the State, through incarceration,
> had deprived the inmates of access to medical care, it had
> a non-delegable constitutional duty to provide medical
> care of its own.  It was only the State that could provide
> medical care to inmates and the physician with whom the
> State had contracted to provide such care, thus functioned
> within the State system.  West at 55.  This finding echoed
> the formulation of the Court in Jackson v. Metropolitan
> Edison Co., 419 U.S. at 352, that state action is 'present
> in the exercise by a private entity of powers traditionally
> exclusively reserved to the State.'  As we have noted,
> here, as in Rendell-Baker, the state contractor was not

11

> providing a service within the exclusive province of the
> state.

Black, *supra* at 711 (emphasis supplied).

The facts as alleged by Plaintiffs are far below what is necessary to pass the first three-tiered test.  As plead in Plaintiff's Complaint, a recommendation was made to parent-Plaintiffs that they have minor-Plaintiff's physical examination performed by their family physician.  See Exhibit "A" to Plaintiff's Complaint. However, a physical examination through GSFP was offered as an alternative, which parent-Plaintiffs apparently chose.  Id.  There is no allegation made in Plaintiff's Complaint, nor can any allegation be made, that GSFP's optional performance of a physical examination on minor-Plaintiff is a service traditionally within the exclusive province of the state as required to establish state action by GSFP.  See Exhibit "A" generally.

School physical examinations are unquestionably not a traditional public function by exclusion, which is, in fact, specifically illustrated in this case by Northwest's recommendation that student physical examinations be performed by students' respective family physicians.  See Exhibit "A" to Exhibit "A".  Plaintiffs cite to no state regulation to establish that the provision of physical examinations to students is a matter reserved to the state, similar to in the correctional context (because it is not).  Id. and West, *supra*.  GSFP was merely a private group serving a public function, gratuitously offered through Northwest.  Finally, based on the

12

foregoing legal precedents, it is legally irrelevant to the instant analysis that GSFP

may have been compensated by Northwest pursuant to contract, and at the expense

of the public,[4] for providing physical examinations to students at Northwest.

> b.   Test #2: Has GSFP has acted in sufficient concert with
> state officials?

Under the second test, a two-pronged approach is taken in order to determine

whether there exists what has been termed a "joint participation" between the

private party contractor and the state.  Mark v. Borough of Hatboro, 51 F.3d 1137,

1143 (3d Cir. 1995).  In this regard, as explained in Becker, *supra*,

> First, the court must determine 'whether the claimed
> constitutional deprivation resulted from the exercise of a
> right or privilege having its source in state authority.'  Id.
> (quoting Edmonson v. Leesville Concrete Co., 500 U.S.
> 614, 620, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991)).
> Second, the court must decide 'whether the private party
> charged with the deprivation could be described in all
> fairness as a state actor.'  Id. (emphasis omitted) (quoting
> Edmonson, 500 U.S. at 620).

Id. at 812 (emphasis supplied).  Of course, mere allegations that deprivations were

"committed under color of state law" are insufficient to establish joint

participation.  Id.  "Naked assertions," unaccompanied by facts, will accordingly

not withstand a motion to dismiss in this regard.  Id. at 813.

In Black, *supra*, the Third Circuit Court of Appeals further explained that

with regard to action in concert between a private party contractor and the state,

---

[4] Incidentally, no such allegations are made in Plaintiff's Complaint.

there must be a "symbiotic relationship" in order to be able to pursue a claim

against the private party under Section 1983.  A "symbiotic relationship" exists

where the complained of conduct is an "integral part" of public service, with the

state having "many obligations and responsibilities" in this regard.  Id. at 711.  The

Black Court explained:

> In this case, as in Rendell-Baker, there was no symbiotic
> relationship between the state and its independent
> contractor.  Here, as in Rendell-Baker, the cooperation
> between the two was only that appropriate to the
> execution of the subject matter of the contract and the
> contractor's 'fiscal relationship with the State is not
> different from that of many contractors performing
> services for the government.'  457 U.S. at 843.

Id. at 711 (emphasis supplied).   In other words, a "symbiotic relationship" does

not exist where cooperation between the private party contractor and the state is

"only that appropriate to the exertion of the subject matter of the contract."

Sershen, supra at 4.

Plaintiffs' Complaint also fails on the second test.  Specifically, Plaintiffs

avers the existence of no right or privilege to a physical examination by GSFP.

See Exhibit "A" generally.  Rather, Plaintiffs allege that the physical examination

at issue was performed at the request of parent-Plaintiffs and pursuant to a "policy"

at Northwest, which admittedly parent-Plaintiffs could have opted out of, choosing

to have the physical examination performed elsewhere.   Id. at ¶ 14 and Exhibit

"A" thereto.  It cannot be validly argued that the complained of conduct by GSFP

is an "integral part" of public service under the circumstances; rather the scope of GSFP's involvement was for the narrow purpose of executing contractual obligations only, the benefit of which inures to the public.

Moreover, considering GSFP's very limited involvement with Northwest on the facts of this case, notions of fairness also demand that a finding of no state action on the part of GSFP be made. GSFP's limited contractual and fiscal relationship with Northwest is no different from that of most contractors performing services for the state, including school bus drivers, who have been held to be private actors simply carrying out contractual duties. Importantly, as plead, Plaintiff's Complaint reveals conduct by Northwest and GSFP that is, in fact, wholly independent in this particular case. See Exhibit "A" generally. Specifically, there are no allegations made that GSFP was even aware of alleged exchange between parent-Plaintiffs and Northwest regarding parent-Plaintiffs desire to be present for minor-Plaintiff's physical examination (because GSFP was not so aware). Id. Accordingly, where GSFP was unaware of the facts that are critical to Plaintiffs claims in this case, it would be obviously unfair to find state action on its part.

      c.     <u>Test # 3: Has the state so far insinuated itself into a position of interdependence with GSHSF such that it must be recognized as a joint participant in the challenged activity</u>?

To satisfy the third and final test as to whether a private party contractor is a state actor for purposes of a Section 1983 claim, the state must have:

> '<u>exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the [challenged activity] must in law be deemed that of the State</u>.'  <u>Id.</u> at 648 (internal quotation marks and emphasis omitted).  The focus of this analysis is on '<u>whether the state has exercised control <i>over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation</i></u>.'  <u>Id.</u> at 649 (emphasis added).

<u>Becker</u>, <i>supra</i> at 813 (emphasis supplied).  The fact that the state may regulate the private party contractor in general, or as to conduct other than that which is challenged, is irrelevant as a matter of law.  <u>Robert S. v. Stetson School, Inc.</u>, 256 F.3d 159, 165 (3d. Cit. 2001).  This is true even if such state regulation is "extensive and detailed."  <u>Rendell-Baker</u>, <i>supra</i> at 841.

Plaintiffs fail the third and final test involved in determining whether state action is present on the part of GSFP in this case.  There are no allegations made in Plaintiffs' Complaint to suggest that the physical examination of minor-Plaintiff by GSFP was subject to any intrusive and coercive power by the state (again, because it was not), particularly with regard to scope and scheduling details as are at issue in this case.  <u>See</u> Exhibit "A" generally.  Obviously, the scope of a physical

16

examination falls squarely within the medical professional judgment of the examining healthcare provider.  Of note in this regard, it is confirmed in Plaintiff's Complaint that the at issue examination of minor-Plaintiff's genitalia was "optional" and not mandated by any individual or entity, private or state.  <u>See</u> Exhibit "A" to Exhibit "A".

        3.    <u>Conclusion</u>.

Frankly, there is no set of facts that Plaintiffs can plead or prove in this case that will establish state action on the part of GSFP.  Plaintiffs are downright powerless to create state action simply by virtue of a voluntary, consensual physical examination of minor-Plaintiff.  Despite Plaintiffs' apparent best efforts to shoehorn a private actor, in this case GSFP, into the role of a state actor, their allegations are devoid of sufficient factual content to demonstrate that they can state a claim to relief that is plausible on its face.  Accordingly, GSFP respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint against it, with prejudice, and without grating leave to amend, which would be futile.

B.   PLAINTIFFS' SECTION 1983 CLAIM AGAINST GSHSF SHOULD BE DISMISSED BECAUSE THERE ARE NO FACTS ALLEGED TO ESTABLISH THE REQUISITE "DELIBERATE INDIFFERENCE" TO MINOR-PLAINTIFF'S CONSTITUTIONAL RIGHTS

1.   Factual background.

As plead in Plaintiffs' Complaint, it was Northwest, and not GSFP, that was put on notice of parent-Plaintiffs' desire to attend the physical examination of minor-Plaintiff.  See Exhibit "A" to Exhibit "A".  There is no allegation made that GSFP was specifically aware of this desire nor is there indication that the at issue form in this regard was sent to or seen by GSFP.  Id. generally and Exhibit "A" thereto.  Despite the foregoing, Plaintiffs aver that GSFP acted with "deliberate indifference" to minor-Plaintiff's constitutional rights.  See Exhibit "A", ¶¶ 29 and 31-32.  Specifically, Plaintiffs maintain that GSFP developed and maintained customs/policies and failed to train/supervise in this regard.  Id.

2.   Analysis.

As just recently held in Enigwe v. Gainey, 2011 U.S. Dist. LEXIS 38258 (E.D.Pa. 2011),

> A custom 'can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'  Carter v. SCI Graterford Med. Dep't, 2004 U.S. Dist. LEXIS 26058, 2004 WL 3019239, at *4 n.5 (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Where, as here, the allegations include a claimed failure to train employees,

> 'liability under section 1983 requires a showing that the
> failure amounts to 'deliberate indifference' to the rights of
> persons with whom those employees will come into
> contact.'  Carter v. City of Philadelphia, 181 F.3d 339,
> 357 (3d Cir. 1999).

Id. at p. 2 (emphasis supplied).  Deliberate indifference is a "subjective standard of

liability consistent with recklessness as that term is defined in criminal law."

Nicini v. Morra, 212 F. 3d. 798, 811 (3d. Cir. 2000).  The United States Supreme

Court, in Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994), has most

recently defined the deliberate indifference standard as requiring a showing of

subjective awareness of substantial risk of harm.  Justice Souter stated in this

regard that the defendant "must be both aware of facts from which the inference

can be drawn that a substantial risk of serious harm exists, and he must also draw

the inference."  Id., 114 S. Ct. at 1979 (emphasis supplied).

Simply put, while Plaintiffs make the averment that GSFP acted with

deliberate indifference, they set forth no facts to substantiate such averment.  See

Exhibit "A" generally.  There are no factual allegations made in Plaintiff's'

Complaint that GSFP was even aware of alleged exchange between parent-

Plaintiffs and Northwest regarding parent-Plaintiffs desire to be present for minor-

Plaintiff's physical examination (because GSFP was not so aware).  Id.  Moreover,

there is no factual allegation made that GSFP was specifically aware of this desire,

nor is there indication that the at issue form in this regard was sent to or seen by

GSFP.  Id. generally and Exhibit "A" thereto.  Without establishing that GSFP was even aware of parent-Plaintiffs' desire to attend the physical examination of minor-Plaintiff, there can be no awareness of a risk of harm to minor-Plaintiff through performance of a physical examination without parent-Plaintiffs being present.  Plaintiffs' threshold averments of deliberate indifference to minor-Plaintiff's constitutional rights, therefore, fail as a matter of law and Plaintiffs' Section 1983 claim against GSFP should be dismissed, with prejudice.

C.      PLAINTIFFS HAVE FAILED TO ASSERT VALID CONSTITUTIONAL RIGHTS UNDER THE FOURTH, EIGHTH AND/OR FOURTEENTH AMENMENTS TO THE UNITED STARES CONSTITUTION (NOR INFRINGEMENT THEREOF) AS UNDERLYING THEIR SECTION 1983 CLAIM

1.    Factual background.

The factual scenario giving rise to the instant lawsuit arises out of the performance of a school physical examination on minor-Plaintiff  by John Doe, alleged agent of GSFP, without parent-Plaintiffs being present despite their request to be there.  See Exhibit "A" generally.  Based on these alleged facts, Plaintiffs assert in their Complaint that the individually named Defendants in this case violated minor-Plaintiff's constitutional rights under the Fourth, Eighth and Fourteenth Amendments.  Id. at Count I.

2.    Analysis.

A plaintiff must show a constitutional violation in order to succeed in a Section 1983 claim.  McCabe v. Prison Health Serv., 117 F. Supp. 2d 443, 449 (ED.Pa. 1997).  It is the plaintiff's burden to "identify the exact contours of the underlying right said to have been violated."  Berg v. County of Allegheny, 219 F.3d 261 (3d. Cir. 2000).

> a.   Plaintiffs' claims against GSFP under the Fourth Amendment.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. AMEND. IV.  There are essentially two (2) elements to a Fourth Amendment claim.  First, plaintiff must establish that the alleged search or seizure is the type protected under the Fourth Amendment.  Second, plaintiff must establish that the protected search or seizure was unreasonable.  Because Plaintiffs fail to establish both elements, their claim for violation of minor-Plaintiff's Fourth Amendment rights should be dismissed as against GSFP, with prejudice.

> i.   The physical examination of minor-Plaintiff took place with consent of parent-Plaintiffs.

The United States Supreme Court has "long approved consensual searches because it is no doubt reasonable for [a governmental employee] to conduct a search once they have been permitted to do so."  Florida v. Jimeno, 500 U.S. 248,

250-51, 111 S.Ct. 1801, 1803 (1991).  "The standard for measuring the scope of [the] consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood [the scope of the consent to be]?"  Jimeno, 500 U.S. at 251, 111 S.Ct. at 1803-4.

In Jimeno, a police officer pulled over a suspect after overhearing him arrange what appeared to be a drug deal and after witnessing the suspect commit a traffic violation.  The officer requested permission to search the suspect's vehicle, which was given by the suspect.  While opening the passenger door, the officer noticed a brown paper bag lying on the floorboard.  The officer picked up the bag, opened it, and found cocaine inside.

Prior to trial, the trial court granted the suspect's motion to suppress, holding that a general consent to search the car for narcotics did not extend to sealed containers within the car.  The state appellate court, as well as the state supreme court, affirmed.  The United States Supreme Court, however, reversed and remanded, holding that the search of the bag was not violative of the Fourth Amendment.  Specifically, the Supreme Court held that it was "objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs."  Jimeno, 500 U.S. at 251, 111 S.Ct. at 1804.  "A suspect may of course delimit as he chooses the scope of the search to which he consents.  But if

22

his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Id.

Here, as averred in Plaintiffs' Complaint, parent-Plaintiffs were aware of an impending physical examination of minor-Plaintiff and consented to the examination in writing. See Exhibit "A", ¶16 and Exhibit "A" thereto. In the consent form signed by parent-Plaintiffs, it is expressly stated that "[t]he school physical is a complete exam which includes an optional examination of the male genitalia." Id. In no way did parent-Plaintiffs express limited consent to the examination nor did they assert an objection to the optional portion of the physical examination. See Exhibit "A" generally. While parent-Plaintiffs allege that they expressed a desire to be present during the physical examination, such is not equivalent to an objection or limitation concerning the extent of the examination, nor does such suggest a violation of rights protected by the Fourth Amendment. Indeed, it appears that no authority exists to establish that the limitations and/or reasonableness of a search is impacted by the requested presence of another individual during the search.

As per Plaintiffs' Complaint, parent-Plaintiffs provided express consent for a complete physical examination of minor-Plaintiff. Accordingly, Plaintiffs' claim

for violation of minor-Plaintiff's Fourth Amendment rights should be dismissed, with prejudice.

### ii.   There was no Fourth Amendment search.

"The phrase 'searches and seizures' connotes that the type of conduct regulated by the Fourth Amendment must be somehow designed to elicit a benefit for the government in an investigatory, or, more broadly, an administrative capacity." United States v. Attson, 900 F.2d 1427, 1429 (9th Cir.) cert. denied, 498 U.S. 961, 111 S. Ct. 393 (1990), cert. denied Attson v. United States, 498 U.S. 961, 115. Ct. 393 (1990). The "Fourth Amendment cannot be triggered simply because a person is acting on behalf of the government. Instead, the Fourth Amendment will only apply to governmental conduct that can reasonably be characterized as a 'search' or `seizure.' Id. "This threshold inquiry is particularly appropriate where the challenged conduct falls outside the area to which the Fourth Amendment most commonly and traditionally applies -law enforcement." Attson, 900 F.2d at 1430.

"Only rarely ... has the [Supreme] Court considered the nature of Fourth Amendment restrictions on the conduct of governmental officials in noncriminal investigations." Id. (quoting The Supreme Court, 1986 Term - Leading Cases, 101 Harv. L. Rev. 119, 230 (1987)). "Even rarer are the instances in which the Court has considered the application of the Fourth Amendment to noncriminal non-

investigatory governmental conduct." Id.  "Yet when the Court has considered the application of the Fourth Amendment to governmental conduct in a noncriminal context, it has been careful to observe that the application of the amendment is limited." Id.

The opinion in Kia P. v. McIntyre, 2 F.Supp.2d 281 (E.D. NY 1998), is particularly instructive with regard to the matter *sub judice* .  In Mcintyre, Kia P., who was HIV positive, gave birth to Mora P. at Long Island College Hospital. Shortly after delivery, the hospital took a urine sample from Mora, which tested positive for methadone.  McIntyre, 2 F.Supp.2d at 285.  Although the hospital allowed Kia to be released within two (2) days of delivery, the hospital held Mora, who had been evidencing withdrawal symptoms, pending the results of a confirmation test regarding the detection of methadone in Mora's urine.  Id.  Kia denied having used methadone during her pregnancy.  Id.

A hospital social worker also become involved and contacted the authorities. After a "confirmation test" failed to confirm the presence of methadone in the baby's urine, Mora was released from the hospital.  McIntyre, 2 F.Supp.2d at 286. Subsequently, Kia, on behalf of her minor child, brought suit against the hospital and its employees for violations of Mora's Fourth Amendment right to be free from unlawful search, claiming the urine test constituted an illegal search.

25

In dismissing this plaintiffs' Fourth Amendment unlawful search claim on summary judgment, the district court held that the urine test did not constitute a "search" of Mora in violation of the Fourth Amendment.  <u>McIntyre,</u> 2 F.Supp. 2d at 292.  Although the court recognized that Fourth Amendment protections are triggered when "state authorities have children undergo medical procedures for investigatory purposes", the court held that because this test, which was not ordered by CWA, was conducted for <u>medical</u> and not investigatory purposes, the urine test did not constitute a "search" under the Fourth Amendment.  <u>Id.</u> (emphasis supplied).[5]

The averments of Plaintiffs' Complaint clearly establish that the physical examination of minor-Plaintiff was conducted for medical, rather than investigatory, purposes.  <u>See</u> Exhibit "A" generally.  No law enforcement agency was involved in the physical examination.  <u>Id.</u>  The physical examination was not performed due to concerns of child abuse.  <u>Id.</u>  Accordingly, no Fourth Amendment protection is implicated in this case, and dismissal of Plaintiff's Complaint as against GSFP is appropriate as a matter of law.

---

[5]  Although in certain cases medical examinations of children by governmental employees have been held to constitute "searches" under the Fourth Amendment, such cases involved medical examinations conducted for the sole purpose of detecting child abuse.  <u>See</u> <u>Tenenbaum v. Williams,</u> 193 F.3d 581, 595 (2nd Cir.), cert. <u>denied</u> U.S., 120 S.Ct. 1832 (2000) (gynecological exam of child during an investigation for sexual abuse); <u>Van Emrik v. Chemung County Dept. of Social Services,</u> 911 F. 2d 863 (2nd Cir.) appeal dismissed without op., 668 N.E.2d 419 (1996) (involving long bone x-rays during child abuse investigation).

iii.   <u>Even if a constitutionally protected search or seizure occurred, the search and/or seizure was reasonable.</u>

Even if this Honorable Court determines that parent-Plaintiffs did not give consent to the physical examination of minor-Plaintiff, dismissal of Plaintiffs' claim for violation of minor-Plaintiff's Fourth Amendment rights is nonetheless appropriate because the physical examination was reasonable.  The protection afforded under the Fourth Amendment is determined by the circumstances surrounding the alleged search and/or seizure.  "Simply put, this amendment guarantees that governmental intrusion into privacy by means of searches or seizures must be reasonable." <u>Ferguson v. City of Charleston,</u> 186 F.3d 469, 476 (4t Cir. 1999), <u>cert.</u> granted U.S.  , 120 S.Ct. 1239 (2000).  It is clear that "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." <u>Elkins v. United States,</u> 364 U.S. 206, 222, 80 S.Ct. 1437 (1960). While, in a law enforcement context, a warrant, or at least probable cause, is generally required before a search could be considered constitutional, "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, in an indispensable component of reasonableness in every circumstance." <u>National Treasury  Employees Union v. Von Raab,</u> 489 U.S. 489 U.S. 656, 665, 109 S.Ct. 1384 (1989).  This exception applies when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause

requirement impracticable."  Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).  In these type of cases, the Court must balance "the individual's privacy expectations against the government's interests," Von Raab, 489 U.S. at 665-66, with the "degree to which the [intrusion] advances the public interest."  Brown v. Texas, 443 U.S. 47, 51 (1979).

This "special needs" test, however, is not generally different from the test of reasonableness in the law enforcement context.  As the Supreme Court has held:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861 (1979).

The first factor in evaluating the reasonableness of a Fourth Amendment search focuses on the governmental need for the intrusion.  "The Fourth Amendment does not require a governmental need that is compelling in an absolute sense."  Ferguson, 186 F.3d at 477 (citing Veronia Sch. Dist. 47Jv. Acton, 515 U.S. 646,661, 115 S.Ct. 2386 (1995)).  "Instead, the interest must be 'important enough to justify the particular search at hand, in light of other factors

that show the search to be relatively intrusive upon a genuine expectation of privacy.'" Ferguson, 186 F.3d at 477, quoting, 515 U.S. at 661.

"The second factor, the effectiveness of the search, focuses on 'the degree to which [it] advances the public interest.'" Ferguson, 186 F.3d at 478, quoting Michigan Dept. of St. Police  v. Sitz, 496 U.S. 444, 110 S.Ct. 2481 (1990).  In looking at this factor, the Court must leave "the decision as to which among reasonable alternative ... techniques should be employed" to "the government officials who have a unique understanding of, and a responsibility for, limited public resources." Sitz, 496 U.S. at 453-54.

In Ferguson, the Medical University of South Carolina "instituted a policy providing for testing of urine of pregnant women suspected of cocaine use and for reporting, under certain circumstances, of test results to law enforcement officials." Ferguson, 186 F.3d at 473.  The plaintiffs in Ferguson, all of whom were subjected to the policy, brought suit for, among other causes of action, violation of the Fourth Amendment right to be free from unreasonable searches and seizures.  In affirming the trial court's summary judgment, the Fourth Circuit held that the alleged searches, which involved collecting urine of these women, was reasonable and, therefore, not violative of the Fourth Amendment.

The Fourth Circuit found, first, that testing the urine of these women was an effective means of identifying and treating maternal cocaine use while conserving

the limited resources of public health.  186 F.3d at 478.  Next, the court went on to

hold that the degree of intrusion suffered by these women was minimal at best.

"[I]n today's world, a medical examination that does not include either a blood test

or urinalysis would be unusual."  Yin v. California, 95 F.3d 864, 870 (9th Cir.

1996).  By balancing these two factors, the Fourth Circuit determined that "the

searches conducted were reasonable and thus not violative of the Fourth

Amendment."  Ferguson, 186 F.3d at 479.

The physical examination at issue in this case was clearly reasonable.  See

Exhibit "A" generally.  The physical examination of minor-Plaintiff was a standard

procedure, conducted by a healthcare professional and there was nothing unusual

about the manner in which the examination was conducted.  Id.  The fact that

parent-Plaintiffs were not present for the physical examination of minor-Plaintiff,

despite their request to be there, does not make the physical examination

unreasonable.  This is particularly true as to GSFP, whose alleged agent performed

the examination, without being notified that parent-Plaintiffs desired to attend.

Again, there are no factual allegations made in Plaintiffs' Complaint to establish

that GSFP was sent, or saw, the form on which parent-Plaintiffs' documented their

desire to attend.  Id.  Thus, there is no Fourth Amendment right at issue in this

case.

b.   Plaintiffs' claims against GSFP under the Eighth Amendment.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII.  The Eighth Amendment protects <u>convicted prisoners</u> from the unnecessary and wanton infliction of pain, which constitutes cruel and unusual punishment. <u>Hope v.  Pelzer,</u> 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d. 666 (2002).

The protections afforded under the Eighth Amendment's are patently inapplicable in the instant matter.  Minor Plaintiff was not a convicted prisoner, but rather a student. <u>See</u> Exhibit "A" generally.  This case does not involvement punishment in any sense, but rather the reasonable performance of a physical examination by a healthcare professional. <u>Id.</u>  Accordingly, there is no Eighth Amendment right at issue in this case.

c.   Plaintiffs' claims against GSFP under the Fourteenth Amendment.

Although not developed nor particularly clear in their Complaint, it appears that Plaintiffs are attempting to set forth a claim under the Fourteenth Amendment based on the freedom of intimate association, which the Supreme Court characterized as "an intrinsic element of personal liberty. <u>Roberts v. United States Jaycees,</u> 468 U.S. 609, 620, 104 S.Ct. 3244, 3251, 82 L.Ed.2d 462 (1984).  The

right to intimate association is properly based on the "concept of liberty in the

Fourteenth Amendment."  Mayo, 867 F.2d at 375; see Kraft v. Jacka, 872 F.2d

862, 871 (9th Cir. 1989) (basing protection of intimate associational rights on the

fourteenth amendment); IDK, Inc. v. Clark County, 836 F.2d 1185, 1192 (9th

Cir.1988) (same); cf. Swank v. Smart, 898 F.2d 1247, 1252 (7th Cir.) (stating that

intimate associational rights are not protected by the first amendment), cert.

denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

The Fourteenth Amendment embodies three different protections: (1) a

procedural due process protection requiring the state to provide individuals with

some type of process before depriving them of their life, liberty, or property; (2) a

substantive due process protection, which protects individuals from arbitrary acts

that deprive them of life, liberty, or property; and (3) an incorporation of specific

protections afforded by the Bill of Rights against the states. Miller v. Campbell

County, 945 F.2d 348, 352 (10th Cir.1991), cert. denied, 502 U.S. 1096, 112 S.Ct.

1174, 117 L.Ed.2d 419 (1992).  The freedom of intimate association is a

substantive due process right, as is its subset, the familial right of association.

Shondel v. McDermott, 775 F.2d 859, 865-66 (7th Cir.1985); see Archuleta, 897

F.2d at 499 n. 7 (contrasting procedural due process right at issue in that case).

One's freedom of intimate association, which is based on the Due Process

Clause of the Fourteenth Amendment, recognizes as "an intrinsic element of

personal liberty" the right of an individual to develop deeply personal attachments with other individuals.  <u>Roberts</u> at 620, 104 S.Ct. 3244.  Associations entitled to this unique form of constitutional protection are characterized by such attributes as "relative smallness," "a high degree of selectivity," and "seclusion from others in critical aspects of the relationship."  <u>Id.</u>  The Due Process Clause has generally been construed to protect one's right to marry, to procreate, to associate with family members, to rear children, and to become involved in consensual sexual relationships.  <u>Lawrence  v. Texas,</u> 539 U.S. 558, 573-74, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); <u>see</u> <u>generally Schlarp  v. Dern,</u> 610 F.Supp.2d 450 (W.D. Pa. 2009).

Evaluation of a party's Fourteenth Amendment substantive due process rights requires a "balancing [of the party's] liberty interests against the relevant state interests."  <u>Youngberg v.  Romeo,</u> 457 U.S. 307, 321, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982).  Accordingly, this Court must weigh plaintiffs' rights of familial association against the state's interest in protecting children within its jurisdiction from undisclosed/untreated medical issues.  <u>Arnold,</u> 880 F.2d at 313; <u>Franz,</u> 791 F.Supp. at 833; <u>Aristotle P. v. Johnson,</u> 721 F.Supp. 1002, 1010 (N.D.I11.1989); <u>Whitcomb v. Jefferson County Dep't of Social Servs.,</u> 685 F.Supp. 745, 747 (D.Colo.1987).

To determine whether Plaintiffs' familial association rights have been violated in the factual setting of the instant case, the Court must weigh two factors: 1) the state's interests in investigating the medical condition and/or stability of school children, which is the interest served by performance of the physical examination at issue; and 2) parent-Plaintiffs' interests in their familial right of association.  Again, although not particularly clear from Plaintiffs' Complaint, it appears as though plaintiff-Parents are basing this claim upon their desire to be present during the physical examination of minor-Plaintiff.  Griffin v. Strong, 983 F.2d 1544 (10th Cir. 1993).  Initially, a court must examine these factors objectively, that is, outside of the facts or subjective positions of the parties.  Id.  Nonetheless, constitutional rights are not to be evaluated in a vacuum.  Ultimately, the parties' interests must be examined in light of the facts of this particular case.  See Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir.), cert. denied, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).  A court must weigh these interests to determine whether the state's alleged conduct in this case constituted an undue burden on associational rights.  See Hodgson, 497 U.S. at 446, 110 S.Ct. at 2943 (familial privacy interests protected against undue state interference); Roberts, 468 U.S. at 61718, 104 S.Ct. at 3249 ("choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State"); Arnold, 880 F.2d at 312 (right protected against

"unjustified interference" from the government).  See also Planned Parenthood v. Casey, 505 U.S. 833, ----, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992) (applying "undue burden" standard to substantive due process abortion right).

First, this Honorable Court must look to the state's generalized interests in performing physical examinations/screenings of the public school students. Undoubtedly this interest is important.  Cf. State v. Jordan, 665 P.2d 1280, 1285 (Utah) (state has compelling interest in protecting children from physical and psychological impairment resulting from sexual exploitation), appeal  dismissed, 464 U.S. 910, 104 S.Ct. 266, 78 L.Ed.2d 249 (1983).  Second, this Honorable Court must examine the state interests against parent-Plaintiffs' familial right of association with minor-Plaintiff.  This relationship is the basis for an associational right often recognized by courts.  See Morfin v.  Albuquerque Pub. Sch., 906 F.2d 1434, 1439 (10th Cir.1990); Mayo v. Lane, 867 F.2d at 375.  The right to associate with one's family is a very substantial right.  See id.  "Family relationships `by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life.'  Arnold, 880 F.2d at 312-13 (quoting Roberts, 468 U.S. at 619-20, 104 S.Ct. at 3250).

Importantly, a Court must look to the facts surrounding the parties' interests. Griffin.  Not every statement or act that results in an interference with the rights of

intimate association is actionable.  <u>Griffin.</u>  Rather, to rise to the level of a

constitutional claim, the defendant must direct his or her statements or conduct at

the intimate relationship with knowledge that the statements or conduct will

adversely affect that relationship.  <u>Trujillo v. Board of County Commissioners,</u> 768

F.2d 1186, 1190 (10th Cir.1985).

In determining whether an undue interference is actionable under the

Fourteenth Amendment, the decision in <u>Griffin</u> is instructive here.  There, the 10th

Circuit Court of Appeals reversed the District Court determining that no reasonable

juror, when confronted with balancing the interests on the record before us under

the appropriate standard, could determine that plaintiffs associational rights were

unduly violated.  In so concluding the Court stated:

> The record supports [plaintiffs] allegation that defendant
> told [plaintiff], falsely, that [her husband] had confessed
> to child abuse, and that he would be provided an attorney
> when he got to jail. Further, [plaintiff] testified that
> [defendant] questioned her morals when she told him she
> did not believe that [her husband] had committed child
> abuse. [Defendant] interviewed [plaintiffs husband] in
> jail; during that interview, [husband] confessed to
> abusing several young girls. [Husband] testified that
> [defendant], after asking if [husband] had heard from his
> wife, said "the reason she feels this way is because you
> won't confess to what you've done and get the help that
> you need." After [husband's] arrest, [plaintiff] visited
> [defendant] at his office and discussed her plans to move
> to another state. She testified that [defendant] told her "to
> go ahead and start my life over. It was a good idea." She
> also said that [defendant] "us[ed] me against [her

36

husband]" when she tried to explain to [her husband] during a telephone conversation that she was told to leave him and not help him.

We also examine the evidence to determine the severity of the alleged infringement, the need for the defendant's conduct, and any possible alternatives. The evidence in this case gives rise to several considerations. First, both [plaintiff] and [plaintiffs husband] consensually talked to [defendant]. Consensual interviews are less likely to infringe on familial relationships because the parties can always decline to talk. Second, there is no evidence or allegation that the conduct going to [plaintiffs] familial rights of association claims involved physical coercion or conduct that shocks the conscience. See Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir.), cert. denied, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). Third, and weighing the other way, [defendant] apparently lied to [plaintiff] by telling her that Steven had confessed to the crimes with which he was being charged.

We conclude that, on the balance, the infringement of familial rights of association in this case is slight. The right of intimate association is not absolute. Kraft, 872 F.2d at 872. Viewed in the context of the minimal infringement indicated by the record in this case, [defendant's] conduct did not unduly interfere with [plaintiffs] right of familial association with [husband]. Cf. Pittsley, 927 F.2d at 9 ("[T]he liberty interest protected by the substantive due process clause was [not] intended to protect every conceivable family relationship from governmental interference, no matter how far removed...."); Whitcomb, 685 F.Supp. at 747 (stating that government's interest arising from allegations of child abuse may outweigh familial association rights). We conclude that no reasonable juror, when confronted with balancing the interests on the record before us under the appropriate standard, could determine that [plaintiffs] associational rights were unduly violated. We hold that the district court should have granted [defendant's]

> motions for directed verdict or judgment notwithstanding
> the verdict.

Id. at 1548-49.


Similarly, in the instant case the conduct complained of in Plaintiffs' Complaint is insufficient to evidence a violation of parent-Plaintiffs' substantive due process rights under the Fourteenth Amendment.  In examining the averments of Plaintiffs' Complaint closely, Plaintiffs appear to contend that Defendants unduly violated their associational rights by taking actions that interfered with their right to attend the physical examination of minor-Plaintiff.  See Exhibit "A" generally.  The severity of this alleged infringement, as in Griffin, is slight.  There are absolutely no allegations in Plaintiffs' Complaint to demonstrate that the physical examination of minor-Plaintiff was conducted under abnormal conditions, was done in an improper or unethical manner, was conducted by an anyone other than a professional healthcare provider, was done for any improper purpose, or was directed at the familial relationship in any manner.  See Exhibit "A" generally.

Moreover, parent-Plaintiffs were aware of the requirement for the physical examination and consented to same.  Id.  There are no allegations in Plaintiffs' Complaint to demonstrate that physical coercion or conduct that shocks the conscience occurred in this matter.  Id.  On balance, this Honorable Court must conclude that the strong interest in requiring the physical examination of young

38

students, compared with the minimal infringement indicated in Plaintiffs'

Complaint, reveals that the physical examination did not unduly interfere with

parent-Plaintiffs' right of familial association as a matter of law.

> D.   PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AGAINST
> GSHSF SHOULD BE DISMISSED WITH PREJUDICE FOR
> FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
> GRANTED BECAUSE PLAINTIFF HAS FAILED TO PLEAD
> SUFFICIENT SUPPORTING FACTS

> 1.   Factual background.

Plaintiff seek, among other relief, an award of punitive damages against

GSFP.  See Exhibit "A", Count II.  In support of their claim for punitive damages,

Plaintiffs describe the conduct of GSFP and its alleged agent as deliberately

indifferent and "malicious, intentional, and displayed with a reckless indifference

to the rights, safety and well being of the Plaintiff."  Id. at ¶¶ 27, 29 and 31-32.

This is so notwithstanding that the facts plead in Plaintiffs' Complaint merely

establish that a physical examination of minor-Plaintiff was performed by GSFP

without parent-Plaintiffs being present as they had requested, but which GSFP was

unaware of.  Id. generally.

> 2.   Analysis.

 Punitive damages have been defined as damages awarded against a person to

"punish him for his outrageous conduct and to deter him and other like him from

similar conduct."  Restatement of Torts 2nd §908 (2006).  It is well settled that

"punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." Hall v. Jackson, 788 A.2d 389 (Pa.Super. 2001) (Pa.Super. 1987) (emphasis supplied). Furthermore, "the state of mind of the actor is vital [and] the act, or the failure to act must be intentional, reckless or malicious." Hutchinson ex rel Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (emphasis supplied).  Finally, pursuant to §1303.505 ("§505") of the Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 P.S. §§1303.101 et seq., punitive damages may be awarded only for a health care provider's "willful or wanton conduct or reckless indifference to the rights of others."  Id. at §505(a).  Section 505(b) provides that a showing of gross negligence is insufficient to support an award of punitive damages.

Pennsylvania courts have strictly defined what constitutes "willful or wanton conduct" and "reckless indifference".  "Willful conduct" is "when an actor desires to bring about a result or is aware that a result will almost certainly occur as a result of his conduct." Renk v. City of Pittsburgh, 642 A.2d 289 (Pa. 1994) (emphasis supplied).  "Wanton conduct" is when an actor "acts in an unreasonable manner and in disregard of a known and obvious risk that is so great as to make it highly probable that harm would follow" and is usually "accompanied by a conscious indifference to the consequences." Evans v. Philadelphia Transportation

<u>Company</u>, 212 A.2d 440, 443 (Pa. 1965).  Finally, "reckless indifference" is "when an actor with a duty to act knows of facts that cause a high degree of risk and yet deliberately acts or fails to act in order to prevent that risk."  <u>Martin v. Johns-Manville Corp.</u>, 494 A.2d 1088 (Pa. 1985).  An "indifference" to a known risk is closer to an intentional act than the failure to appreciate the degree of risk from a known danger.  <u>Id.</u>  Conduct that is willful wanton or recklessly indifferent is well beyond even "gross negligence", which the Pennsylvania Supreme Court has said is "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.  The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care."  <u>Albright v. Abington Memorial Hosp.</u>, 696 A.2d 1159, 1164 (Pa. 1997).

The factual allegations contained within Plaintiffs' Complaint, when read in a light most favorable to them, do not even suggest gross deviations from the standard of care; at worst, this case involves allegations of mere negligence.  <u>See</u> Exhibit "A" generally.  Plaintiff's Complaint is completely devoid of factual support which if proven, could sustain a jury award of punitive damages.  <u>Id.</u>  To the contrary, the facts plead speak against the essential state of mind element necessary to justify a claim for punitive damages against GSFP, i.e., that GSFP intentionally or maliciously disregarded the alleged consequences to minor-Plaintiff.  Rather, and again at worst, there appears to have been inadvertent

confusion as to whether parent-Plaintiffs were supposed to be present for minor-Plaintiff's physical examination.  Importantly in this regard, <u>Plaintiff has not averred that GSFP even saw, or was otherwise aware of, parent-Plaintiffs' written request to be present for minor-Plaintiff's physical examination</u>.  <u>Id.</u>  Plaintiffs' claim for punitive damages therefore fails as a matter of Pennsylvania law and should be dismissed.

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

_____/S/_____

By:    Craig A. Stone, Esquire
       Michael C. Mongiello, Esquire
       4200 Crums Mill Road, Suite B
       Harrisburg, PA 17112
       (717) 651-3500

Dated: <u>May 16, 2011</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss has been served upon the following known counsel and parties of record this 16th day of May, 2011, via electronic filing:

Matthew B. Weisberg, Esquire
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA 19070

John E. Freund, III, Esquire
King, Spry, Herman, Freund & Faul
One West Broad Street
Suite 700
Bethlehem, PA 18018

David J. MacMain, Esquire
Lamb McErlane, P.C.
24 East Market Street
PO Box 565
West Chester, PA 19381-0565

_____/S/_____

Michael C. Mongiello

05/720107.v1