## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEENAN & KIM KENNEDY, individually and as parents and guardian of TIREKE NEWSOME, a minor, | : : : : | No. 1:11-cv-00382 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF LEBANON, NEIL YOUNG, individually and in his official capacity as principal of Northwest Elementary School, MARYANNE BARTLEY, individually and in her official capacity as superintendent of the School District of Lebanon, GOOD SAMARITAN HEALTH SERVICES FOUNDATION OF LEBANON, GOOD SAMARITAN FAMILY PRACTICE, and JOHN DOES 1-10, | : : : : : : : : ,: : : : : : : | Hon. John E. Jones III |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### December 21, 2011

## I.   INTRODUCTION

Presently before the Court are the Rule 12(b)(6) Motions to Dismiss of

Defendants School District of Lebanon, Neil Young, and Maryanne Bartley, (Doc.

42), and of Defendants Good Samaritan Health Services Foundation, Good

Samaritan Family Practice, and John Does 1-10. (Doc. 53). The motions have been fully briefed and are therefore ripe for our review. For the reasons articulated herein, we will grant both Motions in part and deny both Motions in part.

## II.    PROCEDURAL HISTORY & STATEMENT OF FACTS

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's Complaint (Doc. 33) and accepted as true for purposes of resolving the instant Motion.

Plaintiffs Keenan and Kim Kennedy ("Plaintiff Parents") are individuals and husband and wife and are also the parents and natural guardians of Tireke Newsome ("Plaintiff Child"), a minor. (Doc. 33, ¶ 5). In or around March of 2009, Plaintiff Child enrolled at Northwest Elementary School ("Northwest"), and in September of 2009, Plaintiff Child entered the fourth grade at Northwest. (*Id.* ¶¶ 13-14). Northwest is an elementary school within the Defendant School District of Lebanon, where Defendant Maryanne Bartley ("Bartley") at all times relevant herein served as principal and Defendant Neil Young ("Young") at all times relevant herein served as superintendent. (*Id.* ¶¶ 6-8). These Defendants shall collectively be referred to herein as the "School District Defendants."

The School District Defendants, according to the Complaint, had a policy that all students must submit to a physical examination administered by Defendants

Good Samaritan Family Practice and Good Samaritan Health Services Foundation and its agents or employees, identified in the Complaint as John Does 1-10, collectively the "Good Samaritan Defendants." (*Id.* ¶ 15). The information and consent form provided to Plaintiff Parents provided that parents have the option to either have their child undergo a private physical examination with a doctor of their choosing, or a school exam conducted by the Good Samaritan Defendants. (*Id.* Ex. A). It appears that the Good Samaritan Defendants were the exclusive medical provider for purposes of the school exams should a parent elect not to use a physician of their own choosing. (*Id.*).

Plaintiff Parents were advised that they were permitted to attend the physical examination and they forwarded a consent form to the School District Defendants indicating their desire to attend the physical examination. (*Id.* ¶ 17, Ex. A). The School District Defendants advised Plaintiff Parents that the examination would take place on December 17, 2009, at 2:00 p.m., and Plaintiff Parents made arrangements to attend the examination. (*Id.* ¶ 18).

On or about November 19, 2009, Plaintiff Child was removed from class "by and at the behest and direction of" the School District Defendants. (*Id.* ¶ 19). Plaintiff Child was then subjected to a full physical examination, including an examination of his genitals, conducted by the Good Samaritan Defendants. (*Id.*).

Said examination was conducted outside of the presence of Plaintiff Parents even though Plaintiff Parents had indicated on the School District's consent form that they were exercising their right to be present during the examination. (*Id.* ¶¶ 21-23). Afterward, Plaintiff Child was "visibly upset, crying and shaken from the examination." (*Id.* ¶ 24).

On March 1, 2011, Plaintiffs filed a Complaint in this action alleging § 1983 violations against the City of Lebanon, the School District Defendants, and the Good Samaritan Defendants, a *Monell* claim against the School District Defendants, and related state law claims for negligence and technical battery against the Good Samaritan Defendants. (Doc. 1). On May 27, 2011, the Plaintiffs filed an Amended Complaint, (Doc. 33), referred to simply as the "Complaint" herein, pursuant to a joint stipulation entered into on May 20, 2011, dismissing the City of Lebanon as a party, without prejudice. (Doc. 31). On June 20, 2011, the School District Defendants filed a Rule 12(b)(6) Motion to Dismiss, (Doc. 42), and on June 29, 2011, the Good Samaritan Defendants followed suit with their own Rule 12(b)(6) Motion. (Doc. 53). Having been fully briefed, both Motions are ripe for disposition.

## III.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it

must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

### A.   Counts I, II, and III: Fourth and Fourteenth Amendment Claims

The collective Defendants raise several related arguments in their brief in response to Plaintiffs' Fourth and Fourteenth Amendment claims in Counts I, II, and III of the Complaint. First, both sets of Defendants challenge these claims on the merits, contending that no constitutional right exists and that, if one does, it was not violated on these facts. We address these arguments together. Defendants next raise individual defenses to the Plaintiffs' claims. The School District Defendants contend, first, that no *Monell* liability exists and the municipal Defendants must be dismissed and , second, that the individual School District Defendants are entitled to qualified immunity. The Good Samaritan Defendants contend that, should we find that a constitutional right was violated, the Good Samaritan Defendants are not "state actors" and accordingly cannot be subject to §

7

1983 liability. We address each of these arguments in turn, beginning with the collective Defendants' challenges to the merits of Plaintiffs' § 1983 claims.

### 1.    Plaintiffs' Fourteenth Amendment Claims

Plaintiff Parents contend that they had a Fourteenth Amendment right to "attend the physical examination of [Plaintiff Child]" and to be free from governmental intrusion in the rearing of their child; they argue that they have a constitutional right to be present with and provide comfort to their child while he is undergoing any medical examination or procedure, but especially when he is undergoing a highly intrusive medical examination that includes genital examination. (Doc. 1, ¶ 26). Plaintiff Parents contend that Plaintiff Child has a reciprocal right to have his parents present during such a medical examination. (*Id.*).

The Third Circuit has succinctly articulated the standard for review of Fourteenth Amendment due process claims:

> The Fourteenth Amendment prohibits state action which "deprive[s] any person of life, liberty, or property, without due process of law." To enable individuals to enforce these rights, Congress enacted § 1983 as a federal cause of action against deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States. To state a § 1983 claim, Plaintiffs must demonstrate that Defendants, acting under color of state law, deprived Plaintiffs of a right secured by the Constitution or the laws of the United States . . . .

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 Fed. Appx. 135, 2010 U.S. App. LEXIS 13485, 2010 WL 2600683, *4 (3d Cir. June 30, 2010). These protected liberty interest may arise either from the Fourteenth Amendment itself or "from state-created statutory entitlement." Rees v. Office of Children & Youth, 744 F. Supp. 2d 434 (W.D. Pa. Sept. 30, 2010) (quoting *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)). Statutorily-prescribed rights are not protected entitlements if government officials may, at their discretion, grant or deny the right. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

In the instant case, Pennsylvania statutory law establishes that Plaintiff Parents have the right to be present, and that Plaintiff Child had a reciprocal right to the presence of Plaintiff Parents, during the school medical examination. The Pennsylvania Public School Code of 1949 provides that each child, upon original entrance to a school and in kindergarten, sixth, and eleventh grades, shall undergo a "medical examination and a comprehensive appraisal" of the child's health. 24 Pa. Stat. Ann. § 14-1402(e). The School District's policy reflects this mandate. (Doc. 33, ¶ 5). The Code goes on to provide:

> Parents or guardians of children of school age *shall
> be advised in advance* of the date of examination and
> urged to be present. Medical examinations *shall be
> made in the presence of the parent or guardian of the
> child when so requested* by the parent or guardian.

*Id.* § 14-1405 (emphasis added). Accordingly, the Pennsylvania Public School

Code establishes that Plaintiff Parents have a right to be present during Plaintiff

Child's medical examination should they elect to do so.

While this statutory language sufficiently supports a parent's right to be

present, and is also amenable to an interpretation providing a reciprocal right to the

child, Plaintiffs provide additional support for this contention in the context of

constitutionally-established rights to familial association. Specifically, Plaintiffs

rely on the Fourteenth Amendment's right to familial association and the right of a

parent to make medical decisions for their child, and the reciprocal right of a child

to have his parent, and not the state, make those medical decisions. *See Troxel v.*

*Granville*, 530 U.S. 57, 65-66 (2000). Plaintiffs contend that these rights are

severely encroached upon where a school chooses to force a child into a medical

examination where the parents have expressly stated that such an examination may

take place *only* in their presence.

As the Plaintiffs appropriately state, the right of parents to the care, custody,

and nurture of their children has long been recognized as a liberty interest

protected by the Fourteenth Amendment to the Constitution. *Troxel v. Granville*,

530 U.S. 57, 65-66 (2000) ("It is cardinal with us that the custody, care and nurture

of the child reside first in the parents . . . ."). Specifically, and as articulated by the

10

Plaintiffs in their briefs, the right to familial association is a right with many subsets, including both the right of parents to make medical decisions for their child, and the right of the child to have those decisions made by their parent rather than the state. *See Parham v. J.R.*, 442 U.S. 584, 602 (1979). Accordingly, Plaintiffs have demonstrated that both the Constitution and Pennsylvania statutory law support their Fourteenth Amendment claim to be present and oversee Plaintiff Child's medical examination.

Defendants contend that while the Fourteenth Amendment "protect[s] one's right to marry, to procreate, to associate with family members, to rear children, and to become involved in consensual sexual relationships . . . [n]o reported case supports Plaintiffs' contention that parental rights of association protects anything so pedestrian as the right to be present during a routine, statutorily mandated, physical examination."[1] (Doc. 52, p. 17). Defendants contend that neither the Constitution nor "regulation or statute" provide Plaintiffs' the right to be present during the medical examination of Plaintiff Child. We disagree and, as established

---

[1] While Defendants here contend that no authority, statutory or judicial, exists to support Plaintiffs' claim of a right to be present and a right to the presence of one's parents, they nonetheless rely on the Public School Code's mandate for physical examinations to support their argument that their actions were required by state law and thus could not be unconstitutional. Candidly, we note that the Defendants' reliance on the Public School Code to support their actions, despite their purported ignorance of the Code's requirement of parental presence where elected, is quite disingenuous.

above, find that both the Constitution and Pennsylvania statutory law support

Plaintiffs' contentions that they were wrongly deprived of the right to be present

during the medical examination of Plaintiff Child.

Accordingly, having pled that Plaintiff Parents opted to be present during the

examination and that the examination was held outside of their presence, and

further having pled that Plaintiff Parents were not even so much as notified of the

change in the examination date, and further having established that both the

Constitution and Pennsylvania statutory law provide a right of the parent to be

present during medical examinations, and the right of the child to have his parents

present, we deny Defendants' Motions to Dismiss Plaintiffs' § 1983 claims for

violation of the Fourteenth Amendment.

### 2.    Fourth Amendment Claim

The collective Defendants also advance several arguments in their briefs in

response to Plaintiff Child's Fourth Amendment unreasonable search claim.

Defendants contend that the medical examination of Plaintiff Child was not a

"search" within the parameters of the Fourth Amendment, and, alternatively, if the

medical examination was a search, said search was neither unreasonable nor

completed without consent. All parties focus their Fourth Amendment arguments

on whether a routine medical examination conducted pursuant to state law

constitutes a search for purposes of the Fourth Amendment, given that it arguably has a non-criminal and non-investigatory purposes. (Doc. 52, pp. 10-13; Doc. 58, pp. 8-9). Ultimately, we find that it is not such a search.

Because we have already determined that the Fourteenth Amendment claims, as pled, survive a motion to dismiss and are supported by a substantial weight of authority, we decline to create new law in this Circuit on the Fourth Amendment question. Indeed, we have found no strong support for what we suspect Plaintiffs themselves might concede is a novel legal argument. The Third Circuit and, indeed, a majority of the Circuits nationwide, have not expressly ruled on whether a routine medical examination, conducted for non-criminal and non-investigatory purposes, constitutes a "search" for Fourth Amendment purposes. Plaintiffs have thus provided no Third Circuit authority supporting their Fourth Amendment claim, Defendants contend that none exists, and this Court's independent review further indicates a dearth of jurisprudence substantiating the Plaintiffs' Fourth Amendment claim.[2] Moreover, we are not inclined in any event to extend the reach of the Fourth Amendment in the fashion suggested by

---

[2] While we note that the Plaintiffs do cite a single, extra-Circuit case for their proposition that such a routine search with non-criminal and non-investigatory purposes constitutes a search protected by the Fourth Amendment, *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003), we find that the facts of the case are distinguishable and are thus unpersuaded by the decision of the Tenth Circuit.

Plaintiffs. Accordingly, we shall grant the collective Defendants' Motions to Dismiss Plaintiffs' Fourth Amendment claims.

### 3.    The Good Samaritan Defendants

On the facts as pled in the Plaintiffs' Complaint, it appears that the Good Samaritan Defendants, and their employees and agents, served as the School District's exclusive physicians for purposes of the state-mandated well-child examinations. (Doc. 33, ¶ 15, 19, 43, Ex. A). Exhibit A, attached to Plaintiffs' Complaint, provides that the mandatory medical examinations will be completed exclusively by the Good Samaritan Defendants. (*Id.* Ex. A). The Plaintiffs state in their Complaint that the actions taken by the Good Samaritan Defendants were taken "by and at the behest and direction of the School District Defendants." (*Id.* ¶ 19). Finally, Plaintiffs' contend that the School District Defendants "had a policy that all students must submit to a physical examination administered by" the Good Samaritan Defendants should the student's parents not elect to have the examination completed by a private physician. (*Id.* ¶ 15, Ex. A).

Accordingly, the face of Plaintiffs' Complaint, coupled with the attached consent form, demonstrates that the Good Samaritan Defendants were the School District Defendants' sole medical provider for purposes of state-mandated medical

and dental examinations, with the exception of circumstances where a child

examined, at his parents' election, by a private physician. (*Id.* ¶ 15, 19, 43, Ex. A).

The Good Samaritan Defendants contend that, even assuming the above

facts to be true, the Plaintiffs have not adequately pled that the Good Samaritan

Defendants are state actors subject to § 1983 liability. After a review of the

Complaint and all facts alleged therein, we disagree with the Good Samaritan

Defendants that the Complaint does not establish that they acted "under color of

law" and, accordingly, hold that they are "state actors" subject to § 1983 liability.[3]

"Although a private party may cause a deprivation of a right, it may be

subjected to liability under 42 U.S.C. § 1983 only when it does so under color of

law." *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The

Third Circuit has explained that the "under color of law" requirement found in 42

U.S.C. § 1983 is interpreted and applied identically to the Fourteenth

Amendment's "state actor" requirement:

> The Fourteenth Amendment provides that no state shall
> deprive any person of life, liberty or property, without
> due process of law. The Fourteenth Amendment governs
> only state conduct, not that of private citizens. In other
> words, 42 U.S.C. § 1983 subjects to liability those who
> deprive persons of federal constitutional or statutory

---

[3] We note that nothing in this opinion shall serve as a bar to the Good Samaritan Defendants revisiting the "state actor" issue at the summary judgment levels should fact discovery and a more fully-developed record warrant such an argument.

> rights under color of any statute, ordinance, regulation,
> custom or usage of a stage. "Under color of law" and
> "state action" are interpreted identically under the
> Fourteenth Amendment. Thus, a plaintiff seeking to hold
> an individual liable under § 1983 must establish that she
> was deprived of a federal constitutional or statutory right
> by a state actor.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Rendell-Baker v. Kohn*, 457

U.S. 830, 837-38 (1982); *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005); *Benn*

*v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d Cir. 2004)). The Circuit has

further succinctly defined the three tests to be applied in determining whether a

private entity, such as the Good Samaritan Defendants, have engaged in sufficient

conduct to be considered "state actors" for purposes of § 1983 liability:

> . . . [W]e have outlined three broad tests generated by
> Supreme Court jurisprudence to determine whether state
> action exists: (1) "whether the private entity has
> exercised powers that are traditionally within the
> exclusive prerogative of the state"; (2) "whether the
> private party has acted with the help of or in concert with
> state officials"; and (3) whether "the [s]tate has so far
> insinuated itself into a position of interdependence with
> the acting party that it must be recognized as a joint
> participant in the challenged activity."

*Id.* at 646 (citations omitted).

The court has further explained that "[t]he principal question at stake is

whether there is such a close nexus between the [s]tate and the challenged action

that seemingly private behavior may be fairly treated as that of the [s]tate itself."

16

*Leshko*, 423 F.3d at 339. The Good Samaritan Defendants contend that they cannot

be considered state actors under any of these tests; Plaintiffs contend, although

without explicit arguments in support thereof, that the Good Samaritan Defendants

satisfy all three of these tests. We address only the second test and, finding that

Plaintiffs' Complaint pleads sufficient facts to establish that the Good Samaritan

Defendants are "state actors" thereunder, find no necessity in addressing

Defendants' contentions with respect to the first and third tests.

The second test, sometimes referred to as the joint action test, seeks to

determine whether the private party has acted "with the help of or in concert with

state officials." *See Kach*, 589 F.3d at 646. This two-prong test first queries the

source of authority that the private party has acted under and, second, whether that

party in fairness can be held to be a state actor. *See Becker v. City Univ. of Seattle*,

723 F. Supp. 2d 807, 812 (E.D. Pa. July 8, 2010) (citing *Mark v. Borough of*

*Hatboro*, 51 F.3d 1137, 1143-44 (3d Cir. 1995)). The *Becker* court classified the

first prong inquiry as "under what authority did the private [party] engage in the

allegedly unlawful acts?" *Id.* (citing *Mark*, 51 F.3d 1137). The second inquiry put

to us is whether, upon consideration of all facts in the complaint, the defendants

can, in all fairness, be classified as state actors. *Mark*, 51 F.3d at 1143-44.

Here, pursuant to a contract between a public school district, which does not dispute that it and its employees as named in the Complaint are state actors, and the Good Samaritan Defendants, the latter became the exclusive medical provider for the School District and completed all examinations on children who did not elect to have their examination completed by their private physician. (Doc. 33, ¶ 15, 19, 43, Ex. A). In the Court's view, based on a considered review of the factual allegations of the Complaint, it appears that the Good Samaritan Defendants acted essentially as a school nurse or school doctor for purposes of these examinations. (*See id.*). The Good Samaritan Defendants, on the facts as alleged by Plaintiffs, acted in concert and jointly with the School District in accomplishing the medical examinations. (*Id.*).

We find that a sufficient factual predicate exists to find that the Good Samaritan Defendants are state actors subject to § 1983 liability: the School District ordered the Good Samaritan Defendants to examine any of the children who did not have private medical examinations completed, and further ordered them to examine Plaintiff Child without consent of Plaintiff Parents; the School District Defendants agreed to and completed a medical examination of Plaintiff Child without said consent; the Good Samaritan Defendants appeared to act in concert with the School District Defendants in coordinating the examinations; and,

critically, the Good Samaritan Defendants appeared to be acting in the capacity of school physicians for these medical examinations. Thus, we believe that Plaintiffs have adequately pled that the Good Samaritan Defendants were acting under the authority granted to them by the School District and in all fairness can be subject to § 1983 liability. Accordingly, we deny the Good Samaritan Defendants' Motion and allow the § 1983 claims against the Good Samaritan Defendants to proceed.

### 4.    The School District Defendants

The School District Defendants attack the Plaintiffs' claims against them on both the individual and municipal levels. They contend first, as to the claims against them as municipal defendants, that the Plaintiffs have failed to state a proper *Monell* claim for municipal liability and, accordingly, that the claims against Defendant School District of Lebanon, and Defendants Young and Bartley in their official capacities, should be dismissed on that ground. Second, the School District Defendants contend that, to the extent Defendants Young and Bartley are sued in their individual capacities, they are entitled to dismissal under the doctrine of qualified immunity. We address each of these contentions in turn.

### i.    *Monell* Claims

Plaintiffs plead claims for municipal liability under both a "deliberate indifference" theory and a "failure to train" theory. (Doc. 30, ¶¶ 38-40). The School

District Defendants contend that Plaintiffs' *Monell* claims must be dismissed for failure to properly state a claim for municipal liability. Finding that the Plaintiffs have done nothing more than formulaically recite the elements of a claim for municipal liability under § 1983, we will grant Defendants' Motion to Dismiss the *Monell* claim.

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." *Id.* at 691. A "policy" is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

As stated above, in order to state a claim for municipal liability under § 1983, the plaintiff must do more than simply engage in a formulaic recitation of the elements of a claim. A plaintiff claiming a constitutional violation against a municipality under § 1983 must demonstrate a "showing" of entitlement to relief,

20

more than a mere "blanket assertion" or conclusory allegation. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiffs must plead facts which demonstrate that Defendants are responsible either for enacting, implementing, or widespreadly engaging in a practice which constitutes or causes a constitutional violation. *See id.* We have previously held that a complaint that merely states the standard for municipal liability under § 1983, without more, is insufficient to survive a *Monell* challenge. *See Heilman v. T.W. Ponessa & Assocs.*, 2008 U.S. Dist. LEXIS 6875, *42-43 (M.D. Pa. 2008) (Jones, J.).

In their Complaint, Plaintiffs contend that the Defendants "developed and maintained policies, practices, and customs exhibiting deliberate indifference to the Constitutional right of persons within the geographic and jurisdictional limits of City of Lebanon, which caused violations of Plaintiffs' constitutional and other rights," that they "failed to adequately and properly supervise and train in various aspects of health care and physical examinations in violation of the law," and that their "conduct . . . was caused by their failure, with deliberate indifference, to properly train, control or supervise the school employees with respect to their procedures." (Doc. 30, ¶¶ 38-40).

Plaintiffs have thus done nothing more than insert the Defendants' names into a formulaic recitation of the elements for municipal liability based on policy or

deliberate indifference, resulting in blanket, conclusory allegations that are

factually unsupported. In addition to the above-quoted averments, Plaintiffs plead

no facts to support their municipal liability claim, and their thin response to the

Defendants' *Monell* challenge in their brief causes us to question whether such

facts exist.[4] Accordingly, we dismiss Count II of Plaintiffs' Complaint.[5]

### ii.   Qualified Immunity

Defendants Young and Bartley contend that, if a constitutional right was

violated, they are protected by the doctrine of qualified immunity. The doctrine of

qualified immunity shields officials acting and sued in their individual capacities.

*See Brandon v. Holt*, 469 U.S. 464, 471-73 (1985). A state or municipal actor

"sued in his individual capacity enjoys qualified immunity if his conduct does not

---

[4] Specifically, Plaintiffs contend that "Defendants' practice of unilateral minor-child genital inspection in contravention of expressed parental authorization exhibits deliberate indifference to Plaintiffs' Fourth and Fourteenth Amendment rights. This policy of unilateralism, in and of itself, is *Monell* violative. Further, Plaintiffs allege 'officials' - Defendants 'failure to train' individual Defendants of their obligation of parental right to supervision, as well as to not exceed parental authorization vis-a-vis physical examination. Defendants' policies were deliberately indifferent to Plaintiffs' constitutional rights." (Doc. 58, pp. 11-12). This is Plaintiffs' sole argument in their brief in response to Defendants' *Monell* challenges. Accordingly, as noted above, Plaintiffs fail to plead anything more than unsupported, conclusory *Monell* allegations, even when confronted with the Defendants' *Monell* challenge.

[5] It is the modern trend within the Circuit to liberally grant leave to amend when dismissing a municipal liability claim pursuant to *Monell* so long as doing so would not be futile. *See James v. City of Wilkes-Barre*, 2011 U.S. Dist. LEXIS 90575, *23-24 (M.D. Pa. Aug. 15, 2011). We are without sufficient facts at this time to conclude that amendment would be futile. Accordingly, Plaintiffs' *Monell* claim is dismissed with leave to amend.

violate clearly established or constitutional rights of which a reasonable person would have known." *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (superseded on other grounds in *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d. Cir. 2009)). The Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action . . . to put [the] defendant on notice that his or her conduct is constitutionally prohibited. Courts are accorded 'discretion in deciding which of the two prongs of the qualified immunity analysis should be address first in light of the circumstances in the particular case at hand."

*Wilson v. Zielke*, 382 Fed. Appx. 151, 152 (3d. Cir. Feb. 9, 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)*; McKee v. Hart*, 436 F.3d 165, 171 (3d Cir. 2006)) (internal citations omitted).

As established above, the Pennsylvania Public School Code provides that a parent "shall" be permitted to be present during the mandatory medical examination of their child should they so elect. *See* 24 Pa. Stat. Ann. § 14-1405 (providing that "[m]edical examinations *shall be made in the presence of the*

*parent or guardian of the child when so requested* by the parent or guardian."
(emphasis added)). Importantly, the Defendants are alleged to have informed the
Plaintiffs of said right in the School District's standard consent form. (Doc. 33, ¶¶
16-18). In their Complaint, Plaintiffs allege that they notified the Defendants that
the examination was not to be completed outside of their presence, and Plaintiffs
have attached to their Complaint a copy of the consent form so indicating. (Doc.
33, ¶¶ 17-18, 21-23).

Accordingly, Plaintiffs have demonstrated that, regardless of whether
Defendants Young and Bartley were aware of the Fourteenth Amendment right of
familial association and its application to the instant circumstances, the
Defendants, as superintendent of a school district and principal of a public
elementary school, knew or should have known that the Public School Code grants
to Plaintiffs a statutory right to be present during a medical examination. Indeed,
the Defendants informed the Plaintiffs of said right in the consent form forwarded
to Plaintiff Parents. As such, we decline to dismiss Plaintiffs' claim on the ground
of qualified immunity as we find the doctrine to be inapplicable to the case at bar.

### B.   Counts IV and V: Certificate of Merit Requirement

The Good Samaritan Defendants contend that Plaintiffs' supplemental state
law claims for negligence and battery must be dismissed because Plaintiffs failed

to file a Certificate of Merit as allegedly required under Pennsylvania law. Plaintiffs counter that their state law claims are not claims for professional liability because they have not stated that Defendants are professionally-licensed actors, and accordingly assert that the Certificate of Merit requirement is inapplicable in the instant case.

Pennsylvania Rule of Civil Procedure 1042.3(a) requires that "[i]n any action based on an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit . . . ." Pa. R. Civ. P. 1042.3(a). This Court has previously held that Rule 1042.3(a) applies to cases in federal court. *See Levi v. Lappin*, 2009 U.S. Dist. LEXIS 52227, *2-3 (M.D. Pa. June 22, 2009). The requirement of notifying the plaintiff prior to moving for judgment of *non pros* has been held to be procedural and thus inapplicable in federal courts; thus, a defendant may move for a *non pros* judgment in a Rule 12(b)(6) motion to dismiss. *See Santee v. U.S.*, 2009 U.S. Dist. LEXIS 88850, *4 (M.D. Pa. Mar. 24, 2009).

The Pennsylvania Superior Court has provided guidance on the question of whether a Complaint presents a claim for professional negligence:

> In order to determine whether an action is a professional
> negligence claim as opposed to another theory of

> liability, the . . . court must examine the averments made
> in the complaint. The substance of the complaint, rather
> than its form, is the controlling factor to determine
> whether the claim against a defendant sounds in
> professional negligence.

*Zokaites Contr. Inc. v. Trant Corp.*, 968 A.2d 1282, 1287 (Pa. Super. Ct. 2009).

Pennsylvania courts have held that informed consent cases sound in professional

negligence, regardless of the label affixed thereto by plaintiffs, and thus require the

filing of a Certificate of Merit. *See Pollock v. Feinstein*, 917 A.2d 875, 878-89 (Pa.

Super. Ct. 2007) (holding that Certificate of Merit was required in informed

consent case as that claim is based on medical professional's failure to adhere to a

particular professional standard of care). Further, the Official Note to Rule 1042.3

supports this holding, stating that the Certificate of Merit requirement shall "apply

to a claim for lack of informed consent," which, at first blush, appears to be the

very claim being asserted by Plaintiff Child in the case *sub judice. See* Rule

1042.3(a), Official Note.

We are mindful of the Superior Court's instruction that this Court is to

contemplate the substance of the Complaint, and more than an at-first-blush

consideration is required. The Defendants' arguments are facially alluring, and we

concede that the question we must now decide is not easy. However, considering

all facts as pled in the Plaintiffs' Complaint, and further considering that the

Defendants are not otherwise dismissed from this lawsuit and that all claims against the Defendants will involve substantially similar discovery, we shall deny Defendants' Motion to Dismiss for failure to file a Certificate of Merit for the following reasons.

We first note that the factual predicate of the case *sub judice* is quite distinct from those which have been labeled "informed consent" cases by the Pennsylvania courts. Indeed, the case law demonstrates that, most often, the determination to be made is whether the particular Defendants made reasonable medical decisions where some form of consent was given and the scope of that consent was allegedly exceeded or whether the Defendants should have, but failed to, advise their patient as to alternatives to or risks of the procedure. *See, e.g.*, *Fitzpatrick v. Natter*, 961 A.2d 1229 (Pa. 2008) (consent obtained but undisclosed risk or alternative); *Southard v. Temple Univ. Hosp.*, 781 A.2d 101 (Pa. 2001) (consent obtained but failure to disclose risk); *Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232 (Pa. 2002) (failure to disclose extent of risks of medical procedure). None of these scenarios exist here.

At its core, Plaintiffs' claim is simply that the parental consent form was flatly disregarded by the Defendants. Plaintiffs do not query whether the Defendants' exceeded the scope of their consent, an inquiry which would usually

warrant expert medical testimony to establish what extent of contact and intrusion was reasonable under the circumstances, or what information a reasonable physician would have provided to the Plaintiffs. Plaintiffs do not contend that the Defendants breached a professional standard of care by exceeding the scope of an ambiguous consent, but rather that the Defendants breached the standard of care attributable to an ordinary, reasonable person in negligently failing to ascertain whether consent existed *at all* before proceeding to engage in an intrusive physical examination of Plaintiff Child.

Accordingly, we are loathe to dismiss Plaintiffs' claim at the Rule 12(b)(6) stage, and thus decline to do so, finding that Plaintiffs have adequately pled, and defended in their briefs, a claim for general negligence and common-law battery against the Good Samaritan Defendants. Our refusal to dismiss Plaintiffs' negligence and battery claims, however, is not without some limitation. Plaintiffs' negligence claim is permitted to go forward on the assumption that the standard applied will be ordinary negligence, not a heightened professional standard of care. If further litigation crystalizes that the appropriate standard to be applied involves, as alleged by the Defendants, professional negligence, the failure to file a Certificate of Merit will ultimately be fatal to the Plaintiffs' negligence and battery claims.

## C.    Punitive Damages

In Counts I, III, and V of Plaintiffs' Complaint, Plaintiffs seek an award of

punitive damages alleging that the actions of the collective Defendants were "so

malicious, intentional, and displayed with a reckless indifference to the rights,

safety, and well being of the Plaintiffs, that imposition of punitive damages are

warranted." (Doc. 33, ¶ 36, 51). In their Motion to Dismiss, the Defendants

contend that Plaintiffs have failed to plead sufficient facts demonstrating anything

remotely resembling malice, intent, or reckless indifference. (Doc. 54, pp. 22-23).

The Third Circuit has succinctly articulated the standard for awarding

punitive damages in § 1983 actions as follows:

> The standard for awarding punitive damages under 42
> U.S.C. § 1983 has been summarized as follows: a jury
> may . . . assess punitive damages . . . under § 1983 when
> the defendant's conduct is shown to be motivated by evil
> motive or intent, or when it involves reckless or callous
> indifference to the federally protected rights of others.
> [The United States Court of Appeals for the Third Circuit
> has] noted that this standard is disjunctive and not
> conjunctive. It explained that for a plaintiff in a § 1983
> case to qualify for punitive award, the defendant's
> conduct must be, at a minimum, reckless or callous.
> Punitive damages might also be allowed if the conduct is
> intentional or motivated by evil motive, but the
> defendant's action need not necessarily meet this higher
> standard.

*Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2003).

In their Complaint, Plaintiffs aver that a very limited consent to the medical examination was given and that Plaintiff Child was subjected to the intrusive medical examination outside of their presence and beyond the scope of their consent as a result of the Defendants conscious disregard of the limited nature of their consent. (Doc. 33, ¶¶ 35-36, 50-51). Specifically, Plaintiff pleads that the Defendants violated Plaintiffs' Fourteenth Amendment rights by "performing the physical examination without the consent of the [Plaintiffs], specifically, by disregarding the provisions [that Plaintiffs] insisted on being present, Defendants agreed [Plaintiffs] could attend, and then disregard[ing] this agreement by pulling [Plaintiff Child] out of class and performing the examination without their consent." (Doc. 33, ¶ 35, 50). Plaintiffs contend that Defendants engaged in a highly intrusive and emotionally-upsetting medical examination of Plaintiff Child, including an examination of Plaintiff Child's genitals, knowing that the examination was consented to *only* if the Plaintiff Parents were present to comfort Plaintiff Child. (*Id.*). Plaintiffs aver that the Defendants knew that an examination of Plaintiff Child without Plaintiff Parents present was not consented to, and knew that Plaintiffs had a right to be present such that an unconsented-to examination would impair their rights, but that the Defendants proceeded to examine the Plaintiff Child regardless, offering no legitimate reason for doing so. (*Id.*).

30

With respect to Plaintiffs' claim for punitive damages in conjunction with the battery claim in Count V, we again disagree with Defendants' contentions that the facts do not support such a claim. As the Good Samaritan Defendants identify, in order to support a jury award of punitive damages, the proper inquiry is whether the defendant acted intentionally, recklessly, or maliciously. *Hutchinson ex rel Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). As established above in the § 1983 damages analysis, the Plaintiffs have thoroughly pled that the Defendants engaged in a highly intrusive physical examination of the Plaintiff Child, including an examination of his genitalia,  and did so without parental consent. (Doc. 33, ¶¶ 20-21, 50, ).

Accordingly, the facts as pled in Plaintiffs' Complaint, taken as true as they must be at this stage in the proceedings, demonstrate that the Defendants, knowing that Plaintiff Parents had a right to be present and knowing that Plaintiff Child had a right to his parents' presence, engaged in a highly intrusive medical examination without either inviting or notifying Plaintiff Parents, thus satisfying the standard for punitive damages on a § 1983 claim. Further, we conclude that Plaintiffs have adequately pled facts supporting a punitive damages award on the battery claim in Count V. Accordingly, we find that, based on the factual averments of Plaintiffs'

Complaint, Plaintiffs may have a meritorious claim for punitive damages and accordingly deny the Defendants' motion to dismiss the punitive damages claims.[6]

## V.   CONCLUSION

To reiterate, and for all of the reasons stated herein, this Court will deny the collective Defendants' Motion to Dismiss as to Plaintiffs' Fourteenth Amendment claims in Counts I and III, finding that Plaintiffs have successfully and sufficiently pled a valid § 1983 claim. This Court also denies the Good Samaritan Defendants' Motion with respect to the state law claims against them for negligence and battery. Moreover, we have determined that Plaintiffs have pled sufficient facts to survive a motion to dismiss on both the § 1983 and state law punitive damages claims and, accordingly, the collective Defendants' Motion to Dismiss the punitive damages claims is denied.

Further, we will grant the collective Defendants' Motion with respect to Plaintiffs' Fourth Amendment claim, finding no authority supporting said claim within the Third Circuit. Finally, the School District Defendants' Motion to Dismiss with respect to Plaintiffs' claim for municipal liability in Count II is granted, pursuant to *Monell* and its progeny, and this Court will grant Plaintiffs a

---

[6] While we deny Defendants' Motion to Dismiss the punitive damages claim at the motion to dismiss level, we note that the Defendants are not precluded from moving for dismissal of this claim at the summary judgment stage should such a motion be warranted following fact discovery, or later at trial.

period of twenty (20) days to amend their *Monell* claim consistent with this opinion. Accordingly,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The School District Defendants' Motion is granted in part and denied in part to the following extent:

    a.  The Defendants' Motion to Dismiss Count I is DENIED as to the Plaintiffs' Fourteenth Amendment claim and GRANTED as to the Plaintiffs' Fourth Amendment claim;

    b.  The Defendants' Motion to Dismiss Count II is GRANTED with leave to amend; and

    c.  The Defendants' Motion to Dismiss Plaintiffs' punitive damages claim is DENIED.

2.  The Good Samaritan Defendants' Motion is GRANTED in part and DENIED in part to the following extent:

    a.  The Defendants' Motion to Dismiss Count I is DENIED as to the Plaintiffs' Fourteenth Amendment claim and GRANTED as to the Plaintiffs' Fourth Amendment claim;

    b.  The Defendants' Motion to Dismiss Plaintiffs' punitive damages claim is DENIED; and

c.     The Defendants' Motion to Dismiss Counts IV and V is

DENIED.

3.     Plaintiffs are **GRANTED** leave to amend Count II of the Complaint

to the extent there are facts which, if true, demonstrate a claim for

municipal liability in accordance with the *Monell* progeny and this

opinion, and such amended Complaint must be filed within twenty

(20) days of this Order**.**

/s John E. Jones III

John E. Jones, III

United States District Judge
